JOHN KELLY, BY JOSEPH KELLY, HIS NEXT FRIEND, v. CONSOLIDATED TRACTION COMPANY.

JOSEPH KELLY v. CONSOLIDATED TRACTION COMPANY.

Submitted July 12, 1898—Decided November 7, 1898.

A boy twelve years of age was about to take passage on an open electric street car having a bar across the side next to an adjoining track. Under the conductor's eye he stepped upon the foot-board at the barred side, and before he was fairly on, the car was started on the conductor's signal and the boy was thrown down and injured. *Held,* that the questions of the conductor's negligence and of contributory negligence in the boy were for the jury, and that a nonsuit was wrong.

On rule to show cause why a new trial should be granted.

Before MAGIE, CHIEF JUSTICE, and Justices DIXON, LUDLOW and COLLINS.

For the plaintiff, in favor of the rule, *Flavel McGee.*

For the defendant, contra, *Abram Q. Garretson.*

The opinion of the court was delivered by

COLLINS, J.    In these actions the respective plaintiffs sought recovery in damages for personal injury sustained by the infant plaintiff through alleged negligence of the defendant's servant and for the resultant loss to the other plaintiff, father of the infant. The two causes were tried together in the Hudson Circuit, and the plaintiffs were nonsuited, the trial judge holding that the plaintiffs' proof showed no negligence of defendant's servant and did show negligence of the person injured contributing to the injury. Such proof was as follows: John Kelly, a lad of twelve years, was injured while attempting to enter as a passenger one of the cars of

the double-track electric street railway owned and operated by the defendant in the city of Bayonne. The car was of the ordinary open kind used in summer, with cross-seats open at each end, to which seats access is had by means of a foot-board, affording at once a step for the passenger and a walk for the conductor while collecting fares. This board is hinged and can be turned up on edge and held in position. There is on each side of these cars a movable rail that can be lowered from the roof to form a cross-bar at the end of the seats. It is common knowledge that when such cars are in service it is the usual custom to keep this cross-bar down and the foot-board on edge, on the side of the car next to the adjoining track, and that passengers are expected to enter and leave the car on the side away from the track and towards the nearest sidewalk. Such conditions were assumed rather than proved at the trial and may be assumed now. The car in question was running northward, up Avenue C, and had stopped at a street-crossing to take on passengers standing on the east side of the avenue. Kelly and a boy named Moody came from the west side of the avenue, thus crossing the down track, and got on the car from the west side. Moody was first. He mounted the foot-board, stooped under the cross-bar and reached a seat in safety, but before Kelly was fairly on the foot-board, the conductor, although he saw him getting on, gave the signal to start. The sudden forward movement of the car threw Kelly to the ground and his foot went under the wheels. It seems to me that on the question of the conductor's negligence a clear case for the jury was presented. In giving reasons for the nonsuit the learned trial judge said that the conductor was not bound to look at the barred side of the car when about to signal the motorman to start, because passengers were not to be expected there. If this be conceded, still the fact remains, if the story of the injured boy be true, that the conductor did see him there and in a position of danger, yet signaled to set the car in motion. It cannot be that a carrier owes an intending

passenger no duty merely because that passenger is attempting to enter the vehicle in a wrong way or at a wrong place. Such an entrance need not be anticipated, but, if seen, proper care must be exercised for the safety of the passenger, and the more precarious the situation the greater should be the care. *Ell. R. R.*, § 1628, and cases cited. If, in the case now under discussion, the foot-board was on edge, Kelly's position on it called loudly for care in the starting of the car. The trial judge did not misapprehend the law on this branch of the case, for he stated that if it had been established in proof that the conductor saw the boy on the foot-board or on the side of the car attempting to get on, it would have been negligent in him suddenly to start the car, but he seems to have overlooked a part of young Kelly's testimony. I quote all on this subject :

"The car was stopped and Jimmy Moody got on first, and I was just starting ; I was not right on when the conductor rang the bell ; he seen me, and the car gave a sudden jerk and my foot went under.

"*Q.* When the car gave a sudden jerk what did it do to you ?

"*A.* It jerked me off on the ground and my foot went under the wheels.

"*Q.* When he rang the bell, how many feet had you on the walking-board ?

"*A.* I had two on—not right on ; I was getting on.

"*Q.* When he rang the bell the car started, you say ?

"*A.* Yes.

"*Q.* And that jerked you off?

"*A.* Yes.

"*Q.* Did both feet go off or only one ?

"*A.* The right foot went off ahead of the left foot.

"*Q.* The right foot first and the left one afterwards, did you say that?

"*A.* Yes.

"*Q.* And which foot went under the car ?

"*A.* The right foot.

"*Q.* Did you leave go of the car, or were you holding fast?

"*A.* I was holding; * * * when I went over to Twenty-second street some more people were standing there waiting to get on, and the car was stopped, and the conductor seen me and told me to get on, and I went to get on; Jimmy Moody got on ahead of me, and I was not right on when he rang the bell.

"*Q.* Were you getting on as quick as you could, or did you loiter?

"*A.* I was taking my time getting on.

"*Q.* Were you going right along, or did you stop?

"*A.* I just went to go in the car, and before I got in the car the conductor rang the bell.

"*Q.* You said the conductor told you to get on; do you remember what he said?

"*A.* He waved his finger at me to get on."

The judge adverted to the alleged gesture of the conductor, which he considered only as an invitation to get on the car at the proper place, but he failed to notice that the conductor saw what did in fact follow the gesture. Doubtless he did not so understand the testimony, but I gather from it that the conductor saw the whole situation, or at least that there was evidence to go to the jury that he saw it.

The question of contributory negligence, too, I think, was for the jury. I cannot say, as matter of law, that the attempt to enter an electric street car at a place where it may be seen, because of barrier or other conditions, that entrance is not invited, must necessarily be negligent even though the car is held for passengers and the attempt to enter is under the conductor's eye. It is not a reasonable anticipation that under such conditions the car will suddenly be started by the conductor's order. In this particular case it should be stated that although the questions asked on the part of the defence showed an insistence that the foot-board was on edge, no witness would so testify, and both Kelly and his companion said

that the board was down.   Kelly also testified that he did not see the bar.   Add to these considerations the powerful one that it is in a boy of but twelve years that negligence is asserted, and both reason and precedent declare against resolution of the question otherwise than as one of fact on which the plaintiffs are entitled to the verdict of a jury.   *Scott* v. *Traction Co.*, 29 *Vroom* 682.

The rules to show cause will be made absolute.