## MINNIE S. YANCEY *vs.* BOSTON ELEVATED RAILWAY COMPANY.

Suffolk. November 12, 1909. — February 24, 1910.

Present: KNOWLTON, C. J., MORTON, BRALEY, SHELDON, & RUGG, JJ.

*Negligence. Street Railway. Practice, Civil,* Verdict, Exceptions.

A young woman, who is ignorant of a custom existing in a city where she recently has arrived of entering the rear vestibule of a street car by the door on the right hand side while other cars are being operated on a parallel track at the left of the car, is not necessarily a trespasser in attempting to enter such a car as a passenger by standing upon the step leading to the left hand door of the vestibule, which is closed while the right hand door is open, and rapping on the closed door for admission, and, if she is on the car lawfully, the conductor, when he sees her on the step and knows her evident purpose of entering the car, owes her the duty of exercising reasonable care for her protection until at least an opportunity has been given her to step down in safety.

If a young woman, who is suffering from a dislocation of the hip and is carrying crutches which have been furnished to her to lessen the weight upon her hip in walking, being in a city where she is ignorant of a prevailing rule and custom as to entering the rear vestibule of a street car by the door on the right hand side while cars are being operated on a parallel track at the left of the car, stands upon the step leading to the left hand door of the vestibule of such a car with both hands on the grab irons, holding her crutches, and raps upon the closed door for admission, whereupon the conductor, seeing her there, shakes his head and immediately gives the signal to start the car, and the car starts, throwing the young woman to the ground, in an action brought by her against the corporation operating the railway, for her injuries thus caused, it cannot be ruled as matter of law that the plaintiff was negligent in being upon the step at the time of the accident, as it could not reasonably be anticipated that, if the plaintiff was refused admission on that side of the vestibule, the car would be set in motion instantly without allowing her time to step off.

In an action against a corporation operating a street railway, it appeared that the

plaintiff was a young woman, who was suffering from a dislocation of the hip and was carrying crutches which had been furnished to her to lessen the weight upon her hip in walking, and that, being ignorant of a prevailing rule and custom that where there are parallel street railway tracks in a street a person must enter the rear vestibule of a street car from the right hand side, she got upon the step leading to the left hand door of the vestibule of such a car with both hands upon the grab irons, holding her crutches, and rapped upon the closed door for admission, and that the conductor, seeing her there, shook his head and immediately gave the signal to start the car, whereupon the car started, and the plaintiff, after being carried a short distance, was unable to retain her footing and fell into the street and was injured. *Held*, that there was evidence of wilful misconduct on the part of the conductor, in giving the signal to start the car in such a way as to cause the plaintiff in her crippled condition to fall into the street while it was in motion, which would make the defendant liable even if the plaintiff was a trespasser.

In an action against a corporation operating a street railway, for injuries sustained by the plaintiff in falling from the step of a car of the defendant when the plaintiff had been attempting to enter the car by the left hand door of the rear vestibule, which was closed in accordance with a rule of the defendant, and the conductor on refusing to open the door had given at the same time a signal to start the car, which, being obeyed by the motorman, caused the accident, the jury should be instructed that, if they find that the plaintiff was not in the exercise of due care or was a trespasser upon the car, they can find the defendant liable only by finding that the acts of the conductor amounted to wilful and wanton recklessness toward the plaintiff.

In an action against a corporation operating a street railway in Boston, for personal injuries from being thrown from a step of an electric street car of the defendant, it appeared that the plaintiff was a young woman who suffered from permanent lameness owing to a dislocation of the hip and had been furnished at a hospital, from which she was returning, with crutches to lessen the weight upon her hip in walking. It could have been found that the plaintiff was not familiar with the methods of entering street cars in Boston, that she crossed the street and approached from the left hand side a vestibule car of the defendant which was stopping at a street crossing for the admission of passengers, that the left hand door of the rear vestibule of the car, on the side toward the parallel track, was closed and locked in accordance with a rule of the defendant and some persons were getting on or off on the right hand side of the vestibule where the door was open, that the plaintiff approached the car with the intention of entering it as a passenger, that she stood upon the step leading to the door on the left hand side of the vestibule with both hands on the grab irons, holding her crutches, and rapped upon the closed door, asking for admission, that the conductor saw her, but shook his head and did not open the door and at the same time rang the bell for the car to start, which it did, carrying the plaintiff a short distance, when being unable to retain her footing she fell off into the street and was injured. It further could have been found that the conductor must have understood that the plaintiff was attempting to enter the car for the purpose of becoming a passenger. *Held*, that the plaintiff's mistake as to the method of entering the car, which the jury could find was owing to her ignorance of the rule and custom as to entering from the right hand side, did not necessarily make her presence on the car unlawful, and that, if she was on the car lawfully, the conductor, knowing of her presence and of her evident purpose, owed her the duty of exercising reasonable care for her protection until at least an oppor-

tunity had been given her to step down in safety; that it could not be ruled as matter of law that the plaintiff was careless, as it could not have been reasonably anticipated that the car would be set in motion instantly without allowing the plaintiff time to step off; and that there was evidence of wilful misconduct on the part of the conductor in giving the signal to start the car in such a way as to cause the plaintiff in her crippled condition to fall into the street while the car was in motion, which would make the defendant liable even if the plaintiff was not in the exercise of due care or was a trespasser; but that the defendant was entitled to have the jury instructed that to find the defendant liable on this ground the acts of the defendant's servant must be shown to have amounted to wilful and wanton recklessness toward the plaintiff; and, on account of a refusal of the presiding judge to give such an instruction, exceptions of the defendant were sustained after a verdict for the plaintiff.

In an action by a crippled young woman against a corporation operating a street railway, for injuries sustained by the plaintiff in falling from the step of a car of the defendant when the plaintiff had been attempting to enter the car by the door on the left hand side of the rear vestibule, which was closed in accordance with a rule of the defendant, and the conductor on refusing to open the door had given at the same time a signal to start the car, which, being obeyed by the motorman, caused the accident, the declaration contained two counts, the first count seeking to recover on the ground that the plaintiff was upon the step of the car lawfully and was in the exercise of due care and was injured by reason of the negligence of the conductor, and the second count seeking to recover on the ground that, even if the plaintiff was not in the exercise of due care or was a trespasser, the defendant should be held liable because the accident was caused by the wilful misconduct of the conductor in starting the car while the plaintiff was upon the step without giving her time to get off.    There was evidence on which it could have been found that the plaintiff was upon the step of the car lawfully and on which it could have been found that the plaintiff was in the exercise of due care.    There also was evidence on which it could have been found that the conductor was negligent or it could have been found that he was guilty of wilful misconduct toward the plaintiff.    The presiding judge refused to instruct the jury that, if the plaintiff was not in the exercise of due care or was a trespasser upon the step of the car, the defendant could be held liable only in case the acts of the conductor amounted to wilful misconduct toward the plaintiff.    The case was submitted on both counts to the jury, who returned a general verdict for the plaintiff.    *Held,* that, as each of the counts stated a good cause of action and the verdict was general, there was no means of knowing on which count the jury had found the defendant liable and had assessed damages; and that, although there was no error as to the first count, the jury might have returned the verdict improperly on the second count, by holding the defendant liable for mere negligence of the conductor, even in case they had found that the plaintiff was not in the exercise of due care or was a trespasser; and therefore that an exception by the defendant to the refusal of the ruling requested must be sustained.

TORT for personal injuries received by the plaintiff from being thrown from a step of an electric street car of the defendant on Cambridge Street in Boston on February 21, 1905.    Writ dated March 15, 1905.

The first count of the declaration alleged that while the plain-

tiff was lawfully on one of the cars of the defendant and while she was in the exercise of due care, by reason of the carelessness and negligence of the defendant, its servants and agents in the operation and control of the car she was thrown violently from the car to the ground and was injured.

The second count, added by amendment, alleged that " while the plaintiff was lawfully on one of said cars, and while in the exercise of due care, and while she was in a place of great peril, to wit, on the step of said car, by reason of the gross negligence of the defendant in starting up said car recklessly, wantonly and with gross disregard of the plaintiff's safety, she was severely injured by being thrown violently to the ground."

In the Superior Court the case was tried before *Bond,* J. The plaintiff testified that at the time of the trial, which was in 1909, she was about twenty-five years old ; that at the time of the accident she lived in Stoneham, Massachusetts, with her sister ; that she came to Boston on February 14, 1905, from Virginia ; that she had been lame all her life owing to a dislocation of her hip ; that on February 21 she went to the hospital where her hip was examined, and she was given some crutches to relieve the weight upon her hip ; that after leaving the hospital she walked with her crutches up the westerly side of Grove Street to Cambridge Street ; that when she got to Cambridge Street she crossed to the opposite side of Grove Street ; that a Forest Hills car headed easterly, or towards Bowdoin Square, was standing on the opposite side of Cambridge Street ; that she went across Cambridge Street toward this car and another car was coming in the opposite direction ; that she got on the rear left hand step of the car, which was standing still and that the vestibule door was closed when she got on ; that she rapped on the door for the conductor to open the door and he shook his head and then he rang the bell and the car went on ; that she was standing on the steps and that the car went about thirty feet, as far as she could guess, and then she was thrown from the car, and that it went about thirty feet again, when it stopped and the conductor came back, and that he and another man picked her up ; that when she got on the step the car was standing partly on the cross walk and the other part toward Boston ; that when she got on the left hand rear step of the car she did not go around the end of the

car to the step on the other side because another car was coming from the opposite direction; that the other car was coming from Bowdoin Square; that that car was about as far away as across the court room, and it passed by her shortly after she got on the step; that when she stepped on the step the other car was about as far away as across the court room; that the conductor was on the rear platform inside the vestibule of the car that was standing still; that she did not think there was any one there besides the conductor; that, when she fell off, the car was going pretty fast; that the other car was not going so very fast because it was near a stopping point; and that she fell off about thirty feet from the cross walk.

On cross-examination the plaintiff testified that she could walk perfectly well without crutches; that they were given to her to relieve the weight upon her hip so that the abscess might heal, and not because she needed them to assist her in walking; that she could walk all right and had not needed crutches since she was a child; that she had lived in South Bethlehem, Pennsylvania, since 1902, and had travelled a good deal on street cars there; that they got on from both sides there; and that she came there from the South where they did not have street cars.

She further testified on cross-examination as follows:

She had ridden on street cars once in Philadelphia. She had also ridden on them in Boston on February 14 and February 20. She had never visited any other large cities. She was about five feet tall. On February 20 with her sister she took a car for the North Station at the corner of Grove Street and Cambridge Street. On the day of the accident she was alone. There were tracks between her and the car upon which she got. At the time she got on the step people were either getting on or off the rear platform of the car on the other side or right hand side of the vestibule where the door was open. The plaintiff saw the vestibule and knew what a vestibule of a street car was. She saw that the door of the vestibule on the left hand side of the car was closed.

"Q. And of course you saw that before you stepped up there? A. Well, I thought they kept the doors closed, anyway. — Q. No, not what you thought. You saw that before you stepped up there? A. Yes; I saw the door was closed."

The lower part of the door was solid and the upper part was glass. She saw all this before she stepped on the car. She stepped on the rear step on the left hand side of the car next the other tracks. There was not any car behind the one she got on. She took hold of the grab handles and stepped up on the step where the door was closed. She had both her feet on the step and had hold of the two grab handles with both hands. The conductor was in the vestibule on the other side of the closed door. " I don't think there was any one standing on the rear platform. There were other people there passing back and forth through the vestibule. There were other people on the platform besides the conductor. I rapped on the glass of the door and told him to open the door. The conductor shook his head. I was still standing there. The car stayed long enough for me to rap on the door. He shook his head and then pulled the string of the bell, and the car started pretty fast, but not at first fast enough to throw me off. He rang the bell right off, while he was shaking his head. He shook his head and then rang the bell. It didn't happen all at once — in a few minutes. It didn't happen all together. It stayed there long enough for me to rap on the door. The conductor didn't wait any space of time. He rang the bell as soon as he shook his head. After the car had gone about thirty feet I fell off because I could not hold on any longer."

" Q. What did the conductor do after the car started? Stood there and looked at you riding? A. Yes, he stood there. — Q. And looked at you riding the distance across this room? A. Yes, he stood there. — Q. Didn't do anything? A. No. — Q. Just stood there? A. Yes."

" At that time I had both my feet on the step and both my hands on the grab irons with my crutches." When the car started she did not hear any bell. She stepped up on to the car to get out of the way of the other car that was coming and to get on in the meantime. She got on the step where the door was closed in order to get in the car that way. She thought as long as she was up there that the conductor might open the door and let her in that way. " When I rapped on the door the conductor shook his head. He pulled the rope and then the car started. After I fell the conductor picked me up. He said, 'My God,

what did you get on there for?' I can walk better now than before the accident."

The character of the other evidence is referred to in the opinion, where the findings warranted by the plaintiff's testimony are stated.

At the close of the evidence the defendant asked the judge to make the following rulings:

1. On all the evidence the plaintiff is not entitled to recover.

2. The plaintiff cannot recover upon the first count in her declaration.

3. The plaintiff cannot recover upon the second count in her declaration.

4. Upon all the evidence the plaintiff was not in the exercise of due care.

5. The plaintiff was not a passenger upon the defendant's car at the time of the accident.

6. The plaintiff was a trespasser upon the defendant's car at the time of the accident.

7. The defendant did not owe to the plaintiff that high degree of care it was bound to exercise toward a passenger.

8. The defendant is not liable for any acts which do not amount to wilful and wanton recklessness toward the plaintiff.

9. To establish the degree of negligence on the part of a defendant necessary for the plaintiff to recover, the plaintiff must show intentional, wilful wrong. The conduct of the defendant's agent must be criminal or *quasi* criminal. If it results in the death of the injured person, he is guilty of manslaughter.

10. The evidence does not show wilful and wanton disregard of the plaintiff's rights by the defendant, its agents or servants.

12. Even if the conductor did start the car after the plaintiff boarded it there was no such probability that injury would result to her as to make his act reckless or wanton.

13. The defendant is not liable for a mere error of judgment on the part of the conductor.

The judge refused to make any of these rulings, although he gave in substance the fifth and seventh, and submitted the case to the jury with other instructions, to which the defendant excepted so far as they were inconsistent with any of the rulings requested.

The jury returned a general verdict for the plaintiff in the sum of $2,500; and the defendant alleged exceptions.

*F. H. Chase*, for the defendant, submitted a brief.

*W. H. Sullivan*, for the plaintiff.

BRALEY, J.    The plaintiff, although a young woman, suffered from permanent lameness, owing to a dislocation of the hip.    In walking, to lessen the weight upon this hip where an abscess had formed, she had been provided with crutches at the hospital from which she was returning to her home at the time of the accident.    The car she intended to take had stopped, and remained standing at a cross walk, with the right hand rear door of the vestibule open on the side next to the street, through which passengers were entering, while the conductor stood on the platform.    But the vestibule door next to the double track was closed.    If the evidence of the witnesses as to the conduct of the plaintiff and the conductor cannot be reconciled, the jury could find from the plaintiff's testimony that she crossed the street in her line of travel with the intention of taking passage and, approaching the car from that side, stood upon the step, with both hands on the grab irons, holding her crutches, and rapped upon the closed door, and asked for admission, but, although she was seen by the conductor, he shook his head and did not open the door.    A further finding would have been warranted, that, even if she was seeking to get on from the farther side of the platform, he must have understood she was attempting to board the car for the purpose of becoming a passenger.    But while from his uncontradicted evidence it appeared, that under a rule of the defendant the left hand rear door in the direction in which the car moves is always kept closed and locked, and only the door on the right is used for the entrance and exit of passengers, a momentary mistake as to the method of entrance, of which the jury could find she was ignorant, did not make her presence on the car wrongful, in the sense that her act up to the time of refusal was an intentional invasion of the defendant's possession and control.    *Severy* v. *Nickerson*, 120 Mass. 306.    *Plummer* v. *Dill*, 156 Mass. 426.    See *Hogner* v. *Boston Elevated Railway*, 198 Mass. 260, 270.    The fact that the plaintiff technically was a trespasser did not absolutely relieve the defendant from the duty to observe proper care toward

her or in exercising its own rights so to act as not to injure her unnecessarily. *Lovett* v. *Salem & South Danvers Railroad*, 9 Allen, 557, 562. The car had been stopped for the reception of passengers, and if it were found that the defendant's servant knew not only of the plaintiff's presence but of her evident purpose, the defendant owed the plaintiff the duty of exercising reasonable care until at least an opportunity had been given in which she might safely step down. *Aiken* v. *Holyoke Street Railway*, 184 Mass. 269. *Robertson* v. *Boston & Northern Street Railway*, 190 Mass. 108. *Hogner* v. *Boston Elevated Railway*, 198 Mass. 260, 270. *Donovan* v. *Hartford Street Railway*, 65 Conn. 201. *Dale* v. *Brooklyn City, Hunter's Point & Prospect Park Railroad*, 1 Hun, 146; *S. C.* 60 N. Y. 638. *Kelly* v. *Consolidated Traction Co.* 33 Vroom, 514, 516.

In the description of what followed, if the jury believed the plaintiff, the conductor simultaneously with shaking his head started the car, causing her to be carried a short distance when, being unable to retain her footing, she fell off into the street. It was properly left to the jury to decide whether the conductor was so negligent as to make the defendant liable. Nor could it have been rightly ruled as matter of law, that the plaintiff was careless. It could not have been reasonably anticipated that under such conditions the car would be instantly set in motion. Upon discovery that she had made a mistake when the door was not opened, it could be found that she might assume that the conductor, knowing her perilous position, would not immediately give the signal to start, but would allow her time to step off.

The defendant's requests for rulings, with the exception of the second and third, make no reference to the different counts. The first count does not allege that the plaintiff was a passenger, but charges the defendant with negligence in the management of the car, and, the evidence being applicable to that count, no error appears in the refusal to give the defendant's first, second, fourth and twelfth requests ; but the sixth request should have been given. Nor should the thirteenth request have been granted. It was not asserted by the plaintiff that an error of judgment had been made in starting the car, but that it was knowingly started with a disregard to her safety, and the defend-

ant's evidence was simply a denial of the plaintiff's statement as to the place and cause of the accident.   Besides, the jury were plainly told that, if it happened elsewhere and under entirely different conditions, as the defendant contended, the plaintiff could not recover.

The fifth and seventh requests, while correctly stating the law, were fully and accurately covered by the instructions.   *Graham* v. *Middleby*, 185 Mass. 349.

The second count alleged gross negligence of the defendant in starting the car recklessly and wantonly with gross disregard of the plaintiff's safety, and the defendant excepted to the refusal to give the third, eighth, ninth, tenth and twelfth requests.   We have said that there was evidence for the jury of the defendant's negligence, and a further inference of fact could have been drawn by the jury, that the conductor, with full knowledge of the situation of the plaintiff, although he might not have fully appreciated her bodily infirmities, gave her no opportunity to alight.   The use of unreasonable force, where under the circumstances life or limb may be endangered, can be found to be wilful or reckless and wanton.   A trespasser even cannot be wilfully molested, and dealt with to his harm and injury.   *Planz* v. *Boston & Albany Railroad*, 157 Mass. 377.   The conductor, as the defendant's servant, was in charge of the car, and the defendant was responsible for his acts.   *Holmes* v. *Wakefield*, 12 Allen, 580.   *Young* v. *South Boston Ice Co.* 150 Mass. 527, 528. Deliberately and without warning to start the car at a speed, which the jury might find would compel the plaintiff in her crippled condition to fall into the street while it was in motion, resulting perhaps in loss of life itself, the jury could say constituted such a disregard of consequences, which reasonably should have been anticipated, as to amount to wilful misconduct. *Gordon* v. *West End Street Railway*, 175 Mass. 181.   *Aiken* v. *Holyoke Street Railway*, 184 Mass. 269.   *Banks* v. *Braman*, 188 Mass. 367 (192 Mass. 162, note).   *Black* v. *New York, New Haven, & Hartford Railroad*, 193 Mass. 448, 452.   See *Spooner* v. *Old Colony Street Railway*, 190 Mass. 132.   The denial of the third, tenth and twelfth requests afforded no ground of exception.

By the eighth and ninth requests the attention of the court was directed to the nature of proof required to sustain the alle-

gations of the second count. If not called upon to instruct in the language requested, appropriate instructions as to the liability of the defendant under this count were necessary to a correct understanding by the jury of the issue. In the charge no reference whatever is found to the distinction under our decisions between negligence as ordinarily defined and the wilful misconduct which the plaintiff alleged. *Black* v. *New York, New Haven, & Hartford Railroad,* 193 Mass. 448, 452. The counts are not defective, as each states a good cause of action, and, the verdict being general, there is no means of knowing on which one the jury found the defendant liable, and assessed damages. *James* v. *Boston Elevated Railway,* 201 Mass. 263, 265. The jury, to the defendant's prejudice, having been improperly left to infer that the plaintiff, even if she was not in the exercise of due care or was a trespasser, could recover if the conductor was shown to have been merely negligent, the exceptions to the refusal to give these requests must be sustained. *Bride* v. *Clark,* 161 Mass. 130.

We do not find it necessary to consider the exceptions to the instructions dealing with portions of the testimony, or to the refusal to give certain instructions asked for at the close of the charge. The questions presented may not arise at the second trial, or, if raised, may assume an entirely different aspect.

*Exceptions sustained.*