### JOHN J. BURNS's (dependent's) CASE.

Suffolk.    March 4, 1914. — May 22, 1914.

Present: RUGG, C. J., LORING, BRALEY, SHELDON, & CROSBY, JJ.

*Workmen's Compensation Act.   Proximate Cause.   Words, "Injured."*

Under the workmen's compensation act a finding of the Industrial Accident Board,
that a personal injury to an employee arising out of and in the course of his
employment and resulting in his death was not due to the serious and wilful
misconduct of his employer, so that the compensation to be paid is not to be
doubled under St. 1911, c. 751, Part II, § 3, is final, if there was any evidence to
warrant it.

The serious and wilful misconduct of an employer, which under the provision of
St. 1911, c. 751, Part II, § 3, requires the doubling of the compensation to be
paid for an injury to an employee under the workmen's compensation act, is
much more than mere negligence or even gross or culpable negligence, and in-
volves the intentional doing of something likely to result in serious injury to
others, either with knowledge of or with a wanton and reckless disregard of the
probable consequences.   By SHELDON, J.

Where an employee received a mortal injury arising out of and in the course of
his employment, consisting of a fracture of the spine with a severance of the
spinal cord, which caused not only a paralysis of the legs but a loss of power
and sensation below the seat of injury, and, being under proper medical care
until his death, the employee was obliged to lie in bed in one position until an
extensive bedsore was developed which finally produced blood poisoning that
was the immediate cause of his death, and where a physician testified that the
death resulted from the injury, it was *held,* that a finding of the Industrial
Accident Board that the death of the employee resulted from the injury was
warranted by the evidence and was not wrong as matter of law.   And it was
*said,* that, if the bedsore had been due to mistake or negligence on the part
of the physicians acting honestly, this fact would not have been material, as it
would not have broken the natural and probable connection between the in-
jury and its consequences.

Under the provision of the workmen's compensation act contained in St. 1911,
c. 751, Part II, § 11, as amended by St. 1913, c. 696, an award of additional
compensation may be made on the ground that the legs of a workman were
"so injured as to be permanently incapable of use," where a paralysis of the legs
and feet was caused solely by an injury to the spine and spinal cord.

The additional compensation under the workmen's compensation act, which is
provided by St. 1911, c. 751, Part II, § 11, as amended by St. 1913, c. 696,
for a total or partial loss or permanent incapacity of certain members of the
body of an employee, like the compensation for incapacity for work provided
for by §§ 9, 10, of St. 1911, c. 751, Part II, is intended for the relief of the em-
ployee himself, and an original order for its payment cannot be made after his
death.

Where under the provisions of the workmen's compensation act an injured em-

ployee upon his own application has been awarded during his lifetime a specific compensation for a stated number of weeks for incapacity to work and his death occurs before the expiration of the period, *whether* the right thus adjudicated ceases at his death or whether the payments must be continued until the end of the appointed time, here was referred to as a question that was not passed upon.

APPEAL from a decree of the Superior Court under St. 1911, c. 751, Part III, § 11, as amended by St. 1912, c. 571, § 14, from a decision of the Industrial Accident Board.

The case was heard by *Crosby*, J. The material facts found by the Industrial Accident Board are stated in the opinion, where also are stated the questions of law raised by Bridget Burns, the executrix of the will of the deceased employee and his dependent widow, and by the insurer.

The judge made a decree, reciting that it appeared by the decision of the Industrial Accident Board that the deceased employee received a personal injury arising out of and in the course of his employment which terminated fatally, and that such personal injury was not caused by the serious and wilful misconduct of the employer, and ordering that there be paid by the insurer to Bridget Burns, as executrix, specific compensation under St. 1911, c. 751, Part II, § 11, amounting to $68.46, being ten and one seventh weeks' compensation under that section at $6.75 a week and eight and one seventh weeks' compensation under Part II, § 9, on account of total incapacity for work at the rate of $6.75 a week, that is $54.96, and that there be paid to Bridget Burns as dependent widow, who lived with her husband at the time of his death, the sum of $6.75 weekly, that is, one half his average weekly wages, for a period of three hundred weeks from the date of his injury, less eight and one seventh weeks' compensation to be paid the executrix on account of total incapacity for work before the date of his death, and a reasonable allowance for medical and hospital service and medicines during the first two weeks after the injury.

The insurer, and also Bridget Burns as executrix, appealed from the decree.

*A. L. Richards*, for the insurer.

*J. E. Reagan*, for the executrix and dependent widow.

*J. A. McCaig*, for the employer.

SHELDON, J. 1. Under the provisions of St. 1911, c. 751, Part

II, § 3, if the injury to the petitioner's husband was due to the serious and wilful misconduct of his employer, the compensation must be doubled. She contends that this was the case. The Industrial Accident Board has found against her contention, and this finding is final, if there was any evidence to support it. *Herrick's Case*, 217 Mass. 111, and cases there cited.

The question is not whether it could have been found that the injury was due to the serious and wilful misconduct of the employer, but whether we can say that the finding made was wholly unwarranted. Serious and wilful misconduct is much more than mere negligence, or even than gross or culpable negligence. It involves conduct of a quasi criminal nature, the intentional doing of something either with the knowledge that it is likely to result in serious injury or with a wanton and reckless disregard of its probable consequences. *Banks* v. *Braman*, 188 Mass. 367, and 192 Mass. 162, note. *Warren* v. *Pazolt*, 203 Mass. 328, 347. *Yancey* v. *Boston Elevated Railway*, 205 Mass. 162, 171. *Willis* v. *Boston & Northern Street Railway*, 208 Mass. 589. *Sharkey* v. *Skilton*, 83 Conn. 503, 507. *Louisville, New Albany & Chicago Railroad* v. *Bryan*, 107 Ind. 51, 53. *Johnson* v. *Marshall Sons & Co.* [1906] A. C. 409, 411. *Lewis* v. *Great Western Railway*, 3 Q. B. D. 195, 206, 213. The finding of the Industrial Accident Board as to this must be sustained; and it must be held that the petitioner is not entitled to double compensation.

2. The insurer contends that no compensation should be allowed for the death of the employee. This is on the ground that the proximate cause of the death was not the injury, but was the septicæmia or blood poisoning which resulted from the bedsore that came in consequence of his confinement to bed. But this contention cannot be maintained. He had sustained a mortal injury, one from which death must sooner or later ensue, a fracture of the spine, with a severance of the spinal cord, which caused not only a complete paralysis of the lower limbs, but a loss of power and sensation below the seat of the injury. He was taken to a hospital, and afterwards was under proper medical care until his death. He was obliged to lie in bed in one position; and by reason of this an extensive bedsore was developed, and this extended and grew worse until it brought about the blood poisoning which was the immediate cause of his death. There

was testimony from a physician that the death resulted from the injury. The finding of the Industrial Accident Board was that a chain of causation, not broken by any new intervening act, connected the injury with the death, and therefore that the death resulted from the injury, the septicæmia caused by the bedsore being a contributory cause.

It is manifest that there was evidence in support of the finding, and it must stand unless it was wrong as a matter of law. But that is not so. As was said in *McDonald* v. *Snelling*, 14 Allen, 290, 296, "the mere circumstance that there have intervened, between the wrongful cause and the injurious consequence, acts produced by the volition of animals or of human beings, does not necessarily make the result so remote that no action can be maintained. The test is to be found, not in the number of intervening events or agents, but in their character, and in the natural and probable connection between the wrong done and the injurious consequence. So long as it affirmatively appears that the mischief is attributable to the negligence as a result which might reasonably have been foreseen as probable, the legal liability continues." Nor would it have been material, if that had been found to be the fact, that the bedsore was due to the mistake or the negligence of the physicians acting honestly. *Gray* v. *Boston Elevated Railway*, 215 Mass. 143. *Sauter* v. *New York Central & Hudson River Railroad*, 6 Hun, 446. In a case decided by the Court of Appeal under the English workmen's compensation act it appeared that a workman who had met with an accident, though he had recovered from the immediate effects of his injury, had never regained his normal health, but continued to be weak and debilitated. Thirteen months after the accident, he died from bronchitis, following an attack of influenza. It was by reason of the weakened condition to which the accident had reduced him that the bronchitis proved fatal. It was held that the death resulted from the injury. *Thoburn* v. *Bedlington Coal Co.* 5 B. W. C. C. 128. The same principle was upheld in *Dunham* v. *Clare*, [1902] 2 K. B. 292, in which the death for which compensation was allowed was brought on by a a supervening attack of erysipelas, but was found to have been the result of the preceding injury. See also *Ystradowen Colliery Co.* v. *Griffiths*, [1909] 2 K. B. 533; *Meyer* v. *Butterbrodt*, 146 Ill.

131. Such cases as *Daniels* v. *New York, New Haven, & Hartford Railroad,* 183 Mass. 393, *Snow* v. *New York, New Haven, & Hartford Railroad,* 185 Mass. 321, *Fairfield* v. *Salem,* 213 Mass. 296, and *Scheffer* v. *Washington City, Virginia Midland, & Great Southern Railroad,* 105 U. S. 249, are not applicable here, upon the findings of the Industrial Accident Board.

It follows that compensation rightly was allowed for the death.

3. Compensation also has been allowed under St. 1911, c. 751, Part II, § 11 (amended by St. 1913, c. 696), for the permanent incapacity of both legs. The insurer contends that this was erroneous, because there was no actual injury to the feet or legs themselves, but only to the spine and spinal cord, the paralysis of the lower limbs being due to that injury alone. This presents a very interesting and somewhat close question, which we do not find to have been passed upon by any court. But it is enacted by R. L. c. 8, § 4, cl. 3, that "words and phrases shall be construed according to the common and approved usage of the language," with a provision for technical words and legal terms which is not now material. In common speech the word "injury," as applied to a personal injury to a human being, includes whatever lesion or change in any part of the system produces harm or pain or a lessened facility of the natural use of any bodily activity or capability. If one by external violence had his optic nerve severed close to the brain, or its function destroyed so as to result in blindness, although nothing whatever had been done to the eyes themselves or to the structures immediately surrounding them, it yet would be said in common speech that his eyes had been injured to the point of uselessness. Whatever part of the human body thus has been made incapable of its normal use, so that practically it has ceased to be available for the purpose for which it was adapted, is certainly "injured," according to the common understanding of men. It would be difficult to say that one whose legs had been paralyzed like those of this employee, if entitled to maintain an action therefor, could not properly describe the injury as having been done to his legs. It seems to us to come within the meaning of the statute. It is a harm done to the legs, a loss or detriment caused to them, something which impairs their soundness and diminishes their value. See 16 Am. & Eng. Encyc. of Law, (2d ed.) 499; 4 Words and Phrases, 3615.

It has been suggested that an injury to a higher part of the spinal cord or to the brain itself might result in a total paralysis of all the bodily organs and so lead to a quadrupling of the additional compensation. But we doubt if that would be so. The injuries specified in clause (a) of St. 1913, c. 696, § 1, once compensated for, it is by no means certain that anything more could be allowed. It at least could be plausibly contended that everything else would have been included; that the provisions of clauses (b), (c) and (d) covered nothing additional, but merely provided for injuries of less severity; and that clause (e) simply included a total incapacity resulting from either one of the causes specified.

4. We are of opinion, however, that the right to an order for the future payment of the special compensation ceases with the death of the person injured. It is a right peculiar to himself, not created for the benefit of his dependents. It is a part of the scheme for special compensation provided by §§ 9, 10 and 11 of Part II of the act. By § 9 provision was made for special compensation for a period of total incapacity for work; by § 10 compensation was fixed for a period of partial incapacity; by § 11, as amended by the act of 1913, additional compensation is given for the total or partial loss or incapacity of certain members of the body. All of these provisions seem to have been made for the personal relief of the injured employee, his dependents being provided for by the compensation to be made for his death. The special compensation takes the place of the wages which but for the injury the employee might have earned. As was pointed out by the Industrial Accident Board in its decision, there is nothing in the language of the act which authorizes the ordering of these special payments for a time after the death of the employee, nor is such a construction required by its phraseology or its apparent purpose. If this were not so, the amounts to be paid to his dependents would be increased proportionately to the quickness with which his death followed the incurring of his incapacity, although these payments were manifestly intended to make up for the loss of his own earning capacity. In our opinion the ruling that this specific compensation should be allowed only during the lifetime of the injured employee was correct.

The question whether, if during his lifetime and upon his own petition this specific compensation had been ordered for a stated

number of weeks and his death had occurred before the expiration of that period, the right thus adjudicated would cease at his death, or whether the payments must be continued until the end of the appointed time for the benefit of his dependents, is not raised here, and of course has not been passed upon.

The result is that the decree of the Superior Court was correct, and must be affirmed.

*So ordered.*