Johnson, J.,
dissenting. I vote to affirm the judgment of the courts below.
The claim of the plaintiffs below was predicated on Section 1465-68, General Code, which provides: ‘ Every employe mentioned in subdivision one of section fourteen hereof, who is injured, and the dependents of such as are killed in the course of employment, wheresoever such injury has occurred, provided the same was not purposely self-inflicted * * * shall be paid such compensation out of the state insurance fund for loss sustained on account of such injury or death as is provided in the case of other injured or killed employes.”
Now, the question is, do the allegations of their petition present such a condition as entitles the claimants to compensation under the provisions of the section quoted? Was the contraction of the disease by the drinking of the water, under the circumstances stated, an injury, within the meaning of the statute?
*568 The petition avers that ‘ ‘ the only water available for use as drinking water by said Ezra Cross and the workmen employed in the construction of said culvert, was from a spring or springs near said culvert, which spring or springs had been opened in such maimer as to invite use, and the water therein was apparently good drinking water and had been used by such persons as occasionally visited that locality, and up to and at the time that said Ezra Cross was taken sick with typhoid fever, was being used as drinking water by Ezra Cross and the workmen employed in the construction of said culvert.”
It is also alleged that said spring was in fact impure and contained typhoid bacteria or germs “and said Ezra Cross by the drinking of such spring water contracted typhoid fever, from which he died on May 22, 1920; that typhoid fever is not a usual or ordinary incident to the work in which said Ezra Cross was engaged, but was contracted solely by reason of the condition of said spring water used by said Ezra Cross as drinking water,” as aforesaid.
The statute was passed pursuant to the power granted to the legislature by Section 35, Article II of the Constitution adopted in 1912, which contains the provision: “For the purpose of providing compensation to workmen and their dependents, for death, injuries or occupational disease, occasioned in the course of such workmen’s employment, laws may be passed establishing a state fund to be created by compulsory contribution thereto by employers, and administered by the state determining the terms and conditions upon which payment shall be made therefrom * *
Prior to the adoption of this amendment to the constitution the act of May 31,1911, had been passed, *569 which provided for the creation of a liability board of awards and the establishment of a state insurance fund. This early statute was elective, not coercive, and provided for contribution by employers and employes both, in certain proportions, and contained no provision for compensation for death or injury from occupational disease.
It is manifest that the paramount purpose of the amendment to the constitution was to leave no doubt as to the power of the legislature to pass a compulsory act for the establishment of the fund to which employers should he compelled to contribute, and also to enable the general assembly, among other things, to provide for compensation for occupational disease.
It is obvious that the constitutional convention regarded death or injury from occupational disease as a different thing from the risks of death or injury from the ordinary hazards or chances of accidents or injuries in industrial pursuits.
The legislature did not exercise its power to provide for compensation for death or injury from occupational disease until last year, when it passed an act containing such provisions, 109 Ohio Laws, page 181. Until the passage of that law, occupational diseases were not compensable. That proposition was expressly decided in Industrial Commission v. Brown, 92 Ohio St., 309.
The death of Mr. Cross occurred prior to the passage of the act of 1921 last referred to, and, of course, if his death was caused from an occupational disease, there could be no claim under the law as it then stood, and the demurrer should have been sustained.
*570 Do the allegations of the petition show that the death occurred from an occupational disease? An occupation may be said to be one’s usual and ordinary employment or vocation. It has. been defined to be the particular business, profession, trade or calling which engages the time and efforts of an individual. Logically an occupational disease is one that is contracted in and because of the ordinary operations of the occupation. Necessarily it must be that the possibility of the disease inheres in the usual and ordinary manner in which the occupation is carried on, wholly without reference to and uninfluenced by any outside occurrence or accidental event.
It was held in Industrial Commission v. Roth, 98 Ohio State, 34, that “ A disease contracted in the natural and ordinary course of employment, by a person engaged in a particular calling or occupation, which disease from common experience is known to be a usual and customary incident to such calling or occupation, is an ‘occupational disease,’ and not within the contemplation of the Workmen’s Compensation Law,” and it was further held that “The accidental and unforeseen inhaling by an employe, in the course of his employment, of a specific, volatile poison or gas* resulting in injury or death, is not an ‘occupational disease.’ ”
In that case the claim was predicated upon the allegation that the claimant became ill from poisonous fumes and gases, which he had inhaled, and that that illness resulted in his death. The commission denied compensation, the cause was appealed to the court of common pleas, a petition averring the above facts was held obnoxious to a demurrer, and this *571 judgment was reversed by the court of appeals, whose judgment was affirmed by this court. The effect of that case was to hold that the thing described was an “injury” within the meaning of the statute, and it controls this case.
If one engages in an occupation which requires the use of materials, some of which are volatile, and in the use of which it would be expected that the employe would inhale dangerous gases, even though in small quantities, and he should thereby contract a disease, such would be an occupational disease, because it was a thing which it was known from the beginning might occur. There was no accident, there was no neglect, there was no wrongful act of any sort. It was a thing that was simply an incident to the occupation in which the employe was engaged. Lead poisoning is a very familiar example of such an occupational disease. Many painters work for many years in the use of white lead without apparent injury. Others are affected, and are injured to a greater or less extent, and contract lead poisoning. It is a disease which inheres in the occupation itself. Many other examples might be given of occupations which contain in themselves the inherent possibilities of causing disease.
Now, if a disease is caused by something that has no relation whatever to the occupation, if the thing that causes it is outside of and not related to the particular occupation, it cannot be said to be an occupational disease.
Take for example a factory with several different departments, one in which painters are employed, one in which knife grinders are employed, one in which bookkeepers are employed, and another in *572 which the finished products are. placed in the warehouse. The painter and the knife grinder are each subject to the danger of the disease that is incident to the occupation in which he is engaged. The painter may have lead poisoning or painter’s colic, and the knife grinder may have his lungs insidiously, slowly and imperceptibly injured. There is no such danger to the bookkeeper or the employe in the warehouse. But in the course of their employment suppose they all drink from the same well or drinking fountain, provided by the employer. The water is polluted. They are all injured. All contract typhoid fever from the drinking of the water. That is not an occupational disease. Any stranger or visitor not connected with any of the occupations in the factory might contract the same disease from drinking the same water.
Therefore, I think it is clear that it was not an occupational disease that was described in the petition in this case. The drinking of the water was simply in the course of the general employment connected with the enterprise.
But the question remains: Was the disease contracted from the drinking of the water an injury within the meaning of the statute?
In Burns's. Cuse, 218 Mass., 8, it is said at page 12: “In common speech the word ‘injury,’ as applied to a personal injury to a human being, includes whatever lesion or change in any part of the system produces harm or pain or a lessened facility of the natural use of any bodily activity or capability.”
In Vennen, Admx., v. New Dellas Lumber Co.., 161 Wis,, 370, it was held that “An employee who, as the result of drinking polluted water furnished by. the employer at its factory, became sick with typhoid *573 fever, was at the time of such injury ‘performing service growing out of and incidental to his employment,’ within the meaning of Sec. 2394-3, Stats.” And it was also held in the syllabus, that “Typhoid fever contracted by an employee as the result of drinking polluted water furnished by the employer is a ‘personal injury accidentally sustained’ and ‘proximately caused by accident,’ within the meaning of Sec. 2394-3, Stats.”
In Aetna Life Ins. Co. v. Portland Gas & Coke Co., 229 Fed. Rep., 552, it was held in the syllabus: “Damages which an employer is compelled to pay because of typhoid fever contracted by his employes from water furnished them to drink arise out of bodily injuries accidentally inflicted, within the meaning of a policy insuring the employer against liability for such damages.”
In Plass v. Central New England Ry. Co., 155 N. Y. Supp., 854, it was held that “Sickness due to poison ivy contracted while clearing the right of way is an accidental injury under the New York act.”
In Hurle’s Case, 217 Mass., 223, it was held that optic neuritis resulting in blindness and occasioned by exposure to gases from a defective furnace is a “personal injury” within the Massachusetts act.
In Fidelity & Casualty Co. of N. Y. v. Industrial Accident Commission of California, 177 Cal., 614, 171 Pac. Rep., 429, it was held that under the workmen’s compensation act as it stood in January, 1914, providing for compensation for any personal injuries by accident arising out of and in the course of employment, the word “accident” cannot be confined to an injury by external violence and accidental means, but includes injuries to workmen which are unexpected and unintentional. In that case the eye *574 sight of a sign-writer was impaired from using extraordinary quantities of alcohol during rush of work, which was held to be an injury under the law.
In Dove v. Alpena Hide & Leather Co., 198 Mich., 132, it was held that “A tannery workman employed in unloading hides suffers an accident causing his death where by chance septic germs in the dust from the hides are taken into his respiratory organs and carried into his system, an unusual occurrence m work at which he is employed.”
In Monson v. Battelle, 102 Kans., 208, evidence in an action under the compensation statute was “held to support a finding that the plaintiff was injured on the premises where he was employed, by having to wade through flood water which had overflowed the defendant’s car works;” from which injury his foot was amputated.
It is a matter of common knowledge that typhoid fever is due to typhoid bacillus taken into the intestines. The bacillus attacks the mucous membrane of the intestines and sets up an inflammation which causes the fever. It would seem to be clear that when this occurs the individual has suffered an injury. The taking into the system of the water is not the injury. In fact it is well known that contaminated water is frequently taken into the system by drinking polluted water without an injury following. It is only when the inflammation is. caused by the attack on the intestines by the bacillus that the injury occurs.
The petition in this case alleges that the contamination of the water was not known to either of the parties. This does not affect the right of the claimants.
*575 It was held in Industrial Commission v. Weigandt, 102 Ohio St., 1, that “The test of right to award from the insurance fund under the Workmen’s Compensation Law, for injury in the course of employment, is not whether there was any fault or neglect on the part of the employer, or his employes, but whether the employment had some causal connection with the injury, either through its activities, its conditions or its environments.”
In Section 1465-68«, General Code, act of May 5, 1921 (109 O. L., 183), there is included a schedule of diseases which “shall be considered occupational diseases and compensable as such, when contracted by an employe in the course of his employment in which such employe was engaged at any time within twelve months previous to the date of his disablement and due to the nature of any process described herein.”
In the schedule, under the head of “Description of disease or injury,” there are enumerated fifteen different diseases, and under the head “Description of Process,” connected with each disease, are the descriptions of the process in which the employe is engaged. In Section 6330-1, General Code, amended in the same act, under the head “General duties of employers,” it is provided that “Every employer shall, without cost to the employes, provide such reasonably effective devices, means and methods as shall be prescribed by the industrial commission of Ohio, to prevent the contraction by its employes of illness or disease incident to the work or process in which such employes are engaged.”
*576 It will thus be seen that the legislature of Ohio has attempted in this comprehensive way to make a complete and satisfactory description of what diseases shall he regarded as “occupational diseases,” and compensation for such diseases is provided in the act.
The injury caused to the deceased workman, as described in the petition in this case, was not such a one as was contemplated or covered by any of the provisions of the occupational disease statute. This deceased employe was injured in the course of his employment. The disease was not an incident of the occupation, but the employment had a direct causal connection with the injury to the employe. It was perfectly natural and perfectly proper for the employes engaged upon this enterprise to drink water, and this water was taken in the regular and ordinary way. The decedent was injured in the drinking of the water while in the course of the employment because of the environment under which he was placed pursuant to the employment. The act of drinking the water may be said to have been necessary to the life, comfort and convenience of the workmen while at work.
The suggestion is made that if compensation were allowed in such a case as is set up in the petition it would follow that it would be necessary to allow compensation where contagious diseases were contracted by the employes from mere association or contact with other employes, or persons who might be employed by the same employer. No such result could follow, because the employment itself in those instances would have no causal connection with the injury. The injury in such a case would not be caused by the activities or conditions of the employment.
*577 The rationale of the entire plan is that experience has demonstrated that upon just and scientific considerations injuries received by employes in the course of their employment, not wilfully self-inflicted (the business in which they are employed being in the line of causation), shall be compensated.
It is of high importance that the integrity of the compensation fund raised by the state should be preserved in every proper way, and that it should not be weakened by the allowance of claims which are not within the scope and spirit of its beneficent purpose.
In Industrial Commission v. Weigandt, supra, it was held that the statute was intended to provide a speedy and inexpensive remedy as a substitute for previous unsatisfactory methods and should be liberally construed in favor 'of employes.
I think the injury described in the petition in this case was one that clearly comes within the letter and the spirit of the constitutional amendment and the statute passed pursuant thereto.