MARCELINO ROBLES MENÉNDEZ ET AL., Petitioners, v. SUPERIOR COURT OF PUERTO RICO, SAN JUAN PART; LUIS R. POLO, JUDGE, Respondent.

No. 2562.    Decided June 12, 1962.

642

*Godofredo M. Gaetán Roberts, Pedro Juan Alcalá,* and *Wilfrido Roberts* for petitioners. *F. Fernández Cuyar* for intervener.

Division composed of Mr. Justice Belaval, as Chief Judge of Division, Mr. Justice Hernández Matos, and Mr. Justice Santana Becerra.

PER CURIAM.

In this appeal we issued a writ to review an order entered on June 19, 1959 by the trial court on a questionable right of subrogation *pro tanto.*

The history of the question is faithfully and accurately stated in the petition for appeal as follows:

"1. On February 17, 1953, while José Robles Rosa, an employee of Alberto H. Biascoechea and acting in the course of his employment, was riding on a truck owned and operated by Ramón Maldonado Martínez, the said truck collided with another truck owned by Raúl Gayá Benejam, Inc.; such collision was due

to the combined negligence of the operators of both trucks and resulted in the death of the said José Robles Sosa.

"2. On November 8, 1954, the Manager of the State Insurance Fund, acting in pursuance of the Workmen's Accident Compensation Act and relying on the fact that Biascoechea was an uninsured employer in this case, ordered Biascoechea to pay to the beneficiaries of José Robles Rosa the sum of $2,910. Biascoechea paid this amount after having been sued in court and the attachment of his real property ordered.

"3. Thereafter, on January 21, 1955 the petitioners herein filed in the trial court a complaint against the owners of the trucks involved in the accident and their respective insurers, claiming compensation for the damages sustained as a result of the death of workman José Robles Rosa which occurred in that accident. (See case No. CS-55-269.)

"4. On February 18, 1955, uninsured employer Alberto H. Biascoechea filed a petition for intervention within the said action for damages alleging that by virtue of the payment of $2,910 made to the beneficiaries of workman José Robles Rosa, he was subrogated *pro tanto* in the rights of the latter against the defendants therein who caused the death of the workman.

"5. The trial court denied a motion for dismissal against the petition for intervention, and on April 4, 1955 the plaintiffs answered the petition for intervention alleging that, notwithstanding the payment made by the intervener, the latter had no right whatever to subrogate himself in the action of the plaintiffs against the defendants, namely, the third parties responsible for the death of workman José Robles Rosa.

"6. On December 4, 1958, when said case was called for trial, all the parties appeared and submitted to the trial court the following stipulation on compromise:

" 'The defendants admit their responsibility to pay the corresponding compensation for the death of José Robles Rosa, predecessor of the plaintiffs. The defendants admit all the averments of the petition for intervention, and the plaintiffs also admit all the averments of the petition for intervention. The defendants admit the right of the intervener to subrogate himself *pro tanto*. The plaintiffs deny such right. The defendants and the plaintiffs have therefore agreed to compromise the plaintiffs' claim for the sum of $6,930.

" 'The plaintiffs and the defendants having therefore agreed to compromise for the sum of $6,930, and all the parties having accepted as correct all the averments of the petition for intervention, the only question for decision is, as a question of law, the right or lack of right of the intervener to the prayer in his petition. As soon as the court passes on this point of law, and assuming that the said compromise is approved as respects the plaintiff minor, the defendants will deposit with the Clerk of this Court the aforesaid sum of $6,930, which will be delivered to the respective participants in such manner as the court may decide.'

"7. The plaintiffs and the intervener having discussed at length the latter's right to the prayer in his petition for intervention, on June 19, 1959 the trial court ruled that intervener Alberto H. Biascoechea had the right to subrogate himself *pro tanto* in the rights of the plaintiffs against those defendants responsible for the death of the workman up to the sum of $2,910."

A motion for reconsideration was denied, the trier leaving his ruling standing.

The petitioners challenge the ruling on three grounds, to wit: (1) because the Act did not authorize the employer's subrogation; (2) because the double compensation referred to in the ruling of the trial court does not exist; and (3) because § 1112 of the Civil Code does not apply to the case.

The petitioners may be right as respects the first ground, but not as to the other points. After consideration of the problem raised, we are of the opinion that the ruling challenged should be affirmed.

At the time of the accident, February 17, 1953, the Act did not give the uninsured employer an opportunity to subrogate himself in the rights of the workman and to recover what he would have paid as a result of the accident caused by the fault or negligence of third persons.[1] Since the

---

[1] Since June 24, 1960 the problem was affirmatively decided by express provision of the Workmen's Accident Compensation Act. Act No. 96 of that year (Sess. Laws, p. 261), which amended § 15 of that statute, was

enactment of the Act, § 31 thereof conferred the right of subrogation to the State Fund. However, none of its original provisions nor the subsequent amendments thereto barred the uninsured employer from bringing an action or intervening in proceedings for the purpose of recovering what he paid. At the time of the accident and of the workman's death we did not lack legal provisions or precedents in our decisions for the solution of the question raised herein by his beneficiaries.

■■■■ In matters governed by special statutes resort should be had in the first instance to such special statutes, and, if deficiencies are found therein, to the Civil Code and other statutes *in pari materia*. Sections 12 and 18 of the Civil Code; *Wood* v. *Tax Court*, 71 P.R.R. 216, 218 (1950). Section 1112 of the Civil Code applies.

In the case of *Machado* v. *The American R. R. Co. of P. R.*, 49 P.R.R. 823 (decided on April 28, 1936), we find a situation similar to that in the instant case. The Industrial Commission of Puerto Rico had awarded to Juan Antonio Machado de sum of $1,350 for the loss of his leg while working as a laborer for Central Cambalache. The employer paid this amount. The action brought by the injured workman against American R. R. Co. claiming compensation for dam-

---

enacted on that date, with immediate effect. Since then, that section provides in its last paragraph:

"In cases declared uninsured in which the accident is due to negligence of a third person, the uninsured employer who has paid to the State Insurance Fund the total amount of the liquidation of the case or who has secured payment by depositing a bond to the satisfaction of the Manager, may subrogate himself to the rights of the workman to recover the expenses incurred by him as a result of the accident. The workman or employee or his beneficiaries shall be parties to the proceeding brought in the cause of action they may have against a third person or against the uninsured employer, as the case may be, and any sum collected in excess of the sum paid to the State Insurance Fund by the uninsured employer to cover the liquidation of the case shall be paid to the injured person or to his beneficiaries in case of death, and no extra-judicial transaction shall be valid without their consent."

ages sustained in the accident raised the question regarding the amount which the workman was entitled to receive. The former District Court of Aguadilla held that the workman was entitled to receive $1,800 by way of indemnity, but deducting from that sum the amount of $1,350 which his employer Central Cambalache had paid. When the question as to whether the trial court was right in so holding was raised in this Court, we held, among other things, the following:

"The defendant-appellant urges that section 1112 of the Civil Code, 1930 ed., is applicable to the case at bar. That section provides that any person who makes a payment for the account of another may recover from the debtor the amount of the payment, unless it was made against the express will of the latter. It is argued that the person who paid to the laborer the compensation granted by the Industrial Commission has been subrogated to his rights and that only such person can bring this action. In our opinion, the subrogation does not limit the right of the workman to seek redress from the third person responsible. If the workman were forbidden to sue the third person because of the subrogation, the result would be that the third person guilty of the tortious act would be relieved from paying any amount in excess of that paid by the employer, that he would have been bound to pay in case suit had been brought directly by the laborer. In such action, where the master and the servant are interested parties, the liability of the defendant should be single and indivisible, for it would be unreasonable to subject it to the burdens and inconveniences of two separate suits, one by the servant and one by the master. We are of the opinion that when the workman fails to bring the action, the master may do so in his own name, and that when the action is exercised by the servant, the master has a right to intervene. Perhaps the better practice would be for them to join in bringing the action.

"It is clear, in our opinion, that the action exercised by the plaintiff in the case at bar is authorized by law, and this does not mean that the laborer may enrich himself by receiving double indemnity for the same accidents. If the damages exceed the compensation obtained by the workman, under the Workmen's

Compensation Act, the person who paid this compensation has a right to receive an amount equal to the compensation paid.

.    .    .    .    .    .    .    .

"In the case of *Black* v. *Chicago Great Western R. Co.*, 174 N.W. 774, 780, an action was filed by a workman after he had received compensation according to the Workmen's Compensation Act. The appellate court affirmed the judgment of the lower court, and in concluding the opinion rendered it said:

" 'Under the peculiar circumstances shown, the cause is remanded, with directions that the employer be brought in, to the end that any compensation which has been paid by him may be deducted from the judgment and paid to him, and the balance to plaintiff.' "

██ The same conclusion was reached in *Sanabria* v. *White Star Bus Line*, 50 P.R.R. 722 (1936), and *Castellano* v. *P. R. Beverages*, 74 P.R.R. 830 (1953). In these two cases as well as in the *Machado* case, even though the same statute was not involved, the decision on the question of deduction or reimbursement in favor of the employer who had paid in advance for a damage caused by another and for which he was responsible, was inspired on the principle that no one should or may unjustly enrich himself by receiving double compensation for the same accident. In other words, two different compensations may not be allowed for the same injury, one on the basis of the obligations which the Workmen's Accident Compensation Act imposes on the uninsured employer and another on the basis of the fault or negligence of a third party, according to § 1802 of our Civil Code, even though in the award of both there may exist some common factors.

██ The old and already outmoded principle that subrogation has no place in personal damages, invoked by the petitioners in their elaborate brief—corollary of the discarded doctrine that the personal action is extinguished upon the death of the plaintiff has not been in force in our jurisdiction. The prevailing general rule is that "all the rights acquired by virtue of an obligation are transmissible,

subject to law, should there be no stipulation to the contrary." Section 1065 of the Civil Code. We already know that by their nature or by provision of law there are in our positive-law system rights and obligations labelled very personal, nonassignable, and that not even by the successoral phenomenon they have given room to any subrogation function. So far we have considered as such, among others, use, habitation, patria potestas, support, tutorship, testamentary will.

■ The action brought by the workman's beneficiaries against the wrongdoer or those responsible for his death was a personal action. In *P. R. Ry., Lt. & P. Co.* v. *District Court*, 38 P.R.R. 305, 313 (1928), we said:

"Can the right to claim damages for injuries received by a person through the fault or negligence of another after action has been brought and the issue joined, though not finally decided, be compared to usufruct, use and habitation, any annuity of which the deceased was the recipient, *patria potestas,* support, guardianship, or personal servitude? The question must be answered in the negative.

"It should not be overlooked that in this case an action had been brought. The person who had the right thus showed her determined will to assert it, and did assert it, before the courts of justice. She was owed something as susceptible of collection as if it were the product of her personal labor or of damages caused to her property.

"This being so, can it be held that the action dies with the claimant? We repeat that it can not, because it is not a case of something so very personal as to require the natural existence of the person in order to continue the action.

"The obligation of the defendant accrued at the moment of the occurrence of the accident. It was demandable from that time and was seasonably claimed. A judgment can be rendered in favor of the continuers of the personality of the original claimant as in the case of any other claim. Should any other conclusion be reached, the benefited heir of the plaintiff would not be her descendants, ancestors or collateral relatives, but the very person who injured her. Among the contingencies of the

action favorable to the defendant would be the delays, because there would lie therein the possibility of the disappearance of the plaintiff."

In *Ojeda* v. *Fernández et al.*, 32 P.R.R. 688 (1924), we held that the right to claim damages for breach of contract was assignable. Similarly, in *Carlo* v. *Vargas*, 66 P.R.R. 387 (1946), we held that certain personal rights reserved by contract were assignable.

It is true that, following the case of *In re Burns*, 105 N.E. 601, 218 Mass. 8, in *Heirs of Bachier* v. *Workmens' Relief Com.*, 33 P.R.R. 975 (1925), we held that the right of an injured workman to receive compensation for his disability, whether temporary or permanent, was a personal action of the workman which was extinguished by his death and was nonassignable to his heirs. However, in *Quiñones* v. *South Porto Rico Sugar Co. of P. R.*, 48 P.R.R. 341 (1935), and *Montaner* v. *Industrial Commission*, 55 P.R.R. 262 (1939), we held otherwise.

We have read carefully the case of *Crab Orchard Imp. Co.* v. *Chesapeake & O. Ry. Co.*, 115 F.2d 277, 312 U.S. 702, and the cases of *Mercer Casualty Co.* v. *Perlman*, 23 N.E.2d 502, and *Holland* v. *Morley Button Co.*, 145 Atl. 142, 83 N.H. 482. None of them is applicable to the present case. The *Crab* case, which is a federal decision and the most recent one, decided in November 1940 by the Circuit Court of Appeals, 4th Circuit, holds that an employer who has paid certain benefits to the heirs of a deceased workman may not recover from a third party whose negligence caused the employee's death unless the injury has been intentionally calculated to harm the employer in his contractual obligations. The death of the workman in that case occurred in the State of West Virginia, in a coal mine operated by the employer and as a result of the negligent operation of a railway owned by the Chesapeake & O. Ry. Co. The decision was predicated on the Workmen's Accident Compensation Act of that state,

on the holdings by the courts of that state in the application of that law, and also on the common-law principles on subrogation. Notwithstanding the nature of its decision, the federal court said among other things:

"Although it would seem to, it does not necessarily follow that because the employee retains his right of action against the third party tort-feasor, the employer who has paid compensation as a result of this injury will not be subrogated to this right. Hence, though the Mercer and Merrill cases, supra, are very persuasive, there is no direct authority in West Virginia denying the employer the benefits of this equitable right. It thus becomes necessary to examine both decisions in other jurisdictions and the principles governing common-law subrogation.

"Professor Vance, in his outstanding treatise on Insurance (2d Ed., 1930), p. 680, seems to favor the view that the employer, who has paid compensation to his employee under an Act making no provision for subrogation, is nevertheless, invested with a common-law right of subrogation. This same view is shared by Professor Hardman, through the analogy of fire and marine insurance. See Hardman, The Common-Law Right of Subrogation Under Workmen's Compensation Acts (1926) 26 W.Va.L.Q. 183, 184."

For the reasons stated, the order challenged which was entered by the Superior Court of Puerto Rico, San Juan Part, in the above-mentioned case will be affirmed.