## MARY CARROLL'S CASE.

Suffolk.    October 17, 1916. — November 28, 1916.

Present: RUGG, C. J., LORING, BRALEY, PIERCE, & CARROLL, JJ.

*Workmen's Compensation Act.*

If an employee of a manufacturing corporation in lifting a heavy box in the course of his work sustains an injury, the serious result of which is not apparent at the time, and returns to work at the end of four weeks without making any claim under the workmen's compensation act, and two and one half years after the injury the employee is obliged to stop work and thereafter is unable to work, and if a medical examination discloses the existence of a movable or dislocated kidney caused by the original injury, and about three months thereafter the employee files a claim under the workmen's compensation act, it cannot be found that the claim was made seasonably within the meaning of St. 1911, c. 751, Part II, § 15, requiring that a claim for compensation shall be made within six months after the occurrence of the injury, but it is a question to be determined by an arbitration committee and the Industrial Accident Board, whether the circumstances were such that under § 23 of Part II, added by St. 1912, c. 571, § 5, it can be found that the failure to make the claim within the period prescribed by § 15 "was occasioned by mistake or other reasonable cause" and therefore is not a bar to the maintenance of proceedings under the act.

Where in a claim under the workmen's compensation act it is found under St. 1911, c. 751, Part II, § 23, added by St. 1912, c. 571, § 5, that a failure to make the claim within the six months prescribed by § 15 was occasioned by mistake, it becomes necessary to consider whether the claim was filed within a reasonable time after the mistake was discovered, and in deciding what is a reasonable time all the circumstances of the case in relation to the rights of the insurer as well as to those of the claimant are to be taken into account.

In a claim under the workmen's compensation act a finding of the Industrial Accident Board "that the employer had knowledge of the injury" may be based

wholly on a report of the injury made to the Industrial Accident Board by the employer the day after it happened, although the report was not formally introduced in evidence in the proceedings upon the claim.

In the same case it was *said* that any report which is on file with the Industrial Accident Board may be used as a ground of decision by an arbitration committee or by the board in passing upon the claim to which it relates without its formally being put in evidence.

In the same case it also was *said* that it would be improper for the Industrial Accident Board to base a finding on a correspondence and interviews which in no way appear in the record.

APPEAL to the Superior Court under St. 1911, c. 751, Part III, § 11, as amended by St. 1912, c. 571, § 14, from a decision of the Industrial Accident Board.

The case was heard by *Morton*, J., who made the decree described in the opinion. The insurer appealed.

*E. C. Stone*, for the insurer.

*H. W. Shay*, (*T. F. Higgins* with him,) for the employee.

LORING, J. This is an appeal by the insurer from a decree directing it to pay to one Mary Carroll the sum of $111.21, being one half her average weekly wages from April 7 to September 27, 1915; and in addition to pay her $4.50 a week from September 27, 1915, until this order is revised under St. 1911, c. 751, Part III, § 12.

Mary Carroll was an employee of a manufacturing company of which the appealing insurance company was the insurer. On October 21, 1912, she hurt her back by lifting a box weighing some two hundred pounds. The arbitration committee found that this was an injury arising out of and in the course of her employment. She went home and was unable to do any work for four weeks. At the expiration of that time, namely, on November 18, 1912, she returned to work. Thereafter she continued to work for her employer until April 7, 1915. During this period from time to time she was not able to work and in this way she lost one hundred and twelve days in all. On April 7, 1915, she found that she was no longer able to work. She then left her employment and since then has done no work. At no time did she file a written notice of her injury. But the manufacturing company sent a report of the accident to the Industrial Accident Board on the day after the accident, namely, on October 22, 1912. She filed a claim for compensation on July 6, 1915.

It appeared from her testimony (and both the arbitration committee and the Industrial Accident Board gave credit to her story) that when she lifted the box something cracked in her back, the sight left her eyes, she became dizzy and faint and she had to lean on a fence in order to walk to the car which took her home. When she got home she immediately went to bed. During the four weeks she was away from the mill she was in bed for a day and a half and every day had to lie in bed more or less on account of pain in her back. Her husband was sick and she had only one boy then at work. Under these circumstances she testified there was nothing left for her to do but go to work when she did. She gave various reasons for not making a claim for compensation which are not now material.

The claim for compensation was heard by an arbitration committee on September 27, 1915. The findings of the committee were in substance these: On April 7, 1915, when the petitioner finally stopped work, she was no longer able to work; "her back trouble, attacks of nausea, loss of weight and strength, which caused her to give up her work on April 7, 1915, were the result of the injury sustained on October 21, 1912, probably due to the effect of a dislocated right kidney in a somewhat weakened condition, though not troubling her before said injury." The report of the committee ended in these words: "The committee rules that her claim for compensation was filed and made seasonably on July 6, 1915, because made within a reasonable time following the period when her practical disability began resulting from the injury on April 7, 1915; that she thereafter made her claim as soon as she learned from her physician and counsel as to the cause of her disabled condition which compelled her finally to abandon work." In an earlier part of the report the committee made this finding: In April, 1915, her physician "diagnosed her trouble as a movable or dislocated kidney caused by the injury of October 21, 1912. After some correspondence and interviews following this with her counsel and the office of the Industrial Accident Board, she filed her claim for compensation on July 6, 1915." With respect to the two weeks beginning November 4 and ending November 18, 1912, the committee made this finding: "She did not claim compensation for the brief time she was out of work immediately following the injury, a compensation period of two

weeks, because she did not care to run a risk of losing her position by so doing, which she believed to be the case. . . . Her compensation period immediately following the injury, for a disability of two weeks, was so small that the committee finds that the fact she did not make a claim at the time of this brief incapacity should not prejudice or prevent her rights when her real and practical disability arose on April 7, 1915." The committee decided that the petitioner was entitled to compensation of $5 a week for total disability (1) from November 4, 1912, to November 18, 1912; and (2) from April 7, 1915, to September 27, 1915; and (3) that said weekly payment should continue during her disability.

On appeal the Industrial Accident Board found that the different portions of the evidence (stating some of them) "all sustain the claim that her condition is connected by an unbroken chain of causation with the injury of October 21, 1912. The evidence warrants the finding that the employer had knowledge of the injury and that the claim for compensation was filed and made seasonably within the requirements of Part III, Sections 15 and 16." We assume that by this is meant within the requirements of Part II, § 15. The board then affirmed and adopted the findings and decision of the arbitration committee "with this exception, that we find that the average weekly wages of the employee were $9.50 as shown by the report of the injury." By their decision they found that there was due to the employee the sum of $111.21, being one half the average weekly wages from April 7, 1915, to the date of the hearing on September 27, 1915, and that a weekly payment of $4.50 should continue from that date until the order was revised under St. 1911, c. 751, Part III, § 12.

The finding "that the employer had knowledge of the injury" was based on a report made to the Industrial Accident Board by the manufacturing company on October 22, 1912. In the report the description of the injury was in these words: "Mrs. Carroll was attempting to put a truck she wanted to use over a piece of shafting that had been left on the floor which caused the strain to her back." As to the nature of the injury the report stated: "Dr. Blanchette is attending Mrs. Carroll now and will report his findings to us later." Her average weekly earnings are stated in that report to be $9.50.

It is not clear what the grounds are on which the committee and

the board proceeded in ruling that the claim filed on July 6, 1915, based on an injury sustained on October 21, 1912, "was filed and made seasonably within the requirements" of the act, to quote the terms of the finding made by the board upon this point. In addition to this special finding the board affirmed and adopted the findings and decision of the arbitration committee. This general finding and adoption of the findings of the committee do not add to the specific finding mentioned above. We have already stated the findings of the committee in this regard.

The learned counsel for the petitioner has undertaken to uphold this conclusion of the board on the authority of *Johnson's Case*, 217 Mass. 388. In that case it was held that the date of an injury consisting of lead poisoning caused by the absorption of lead in the system was the date "when, elimination failing, the poison stored up manifested itself in the personal injury and the incapacity which resulted therefrom." But this case does not come within that decision. The injury here occurred when the petitioner lifted the box on October 21, 1912. In the case at bar the day (namely April 7, 1915,) when the petitioner became incapacitated to do any work was not the date of the occurrence of the injury but was the date of the final result of the injury which occurred on October 21, 1912.

On the findings made by the board the conclusion that the claim was seasonably brought was as matter of law not correct and the decree must be reversed.

But we are of opinion that the case should be recommitted to the board for further hearing. We are of opinion that on the evidence before the board a finding could have been made which would have resulted in the decision that the claim would have been seasonably made if it had been filed as soon as the petitioner found out that she was totally incapacitated for work for an indefinite period of time, that is to say, if the claim had been filed immediately after April 7, 1915. When the immediate result of a personal injury is apparently slight and for that reason the employee elects not to present a claim under the workmen's compensation act, and later on serious results caused by the injury come into existence, it well may be found that failure to make a claim within six months of the injury was occasioned by mistake within Part II, § 23, added by St. 1912, c. 571, § 5. No such

finding was made in the case at bar and for that reason the finding made by the committee and by the board that the claim was seasonably made in the case at bar cannot be sustained. But the evidence in this case warranted such a finding.

If such a finding were made in the case at bar the petitioner would be met with the further difficulty that her claim was not made immediately after April 7, 1915. Upon the evidence it would seem that she became aware then that she had a floating kidney and would be totally incapacitated from work for an indefinite period of time. In place of filing a claim then she did not file one until the last day of the next succeeding three months.

The only provision of the act is that the failure to make a claim within six months of the occurrence of the injury "shall not be a bar to the maintenance of proceedings under this act if it is found that it was occasioned by mistake or other reasonable cause." There is nothing in the act which provides when a claim must be filed in case it is found that the failure to make it within six months of the occurrence of the injury was occasioned by mistake. Under these circumstances as matter of construction of the act the claim must be filed within a reasonable time after the mistake is discovered and in deciding what is a reasonable time all the circumstances of the case, including the rights of the insurer as well as the rights of the claimant, are to be taken into account.

The counsel for the insurer has contended that there was nothing before the board which authorized it to find "that the average weekly wages of the employee were $9.50 as shown by the report of the injury." He contends that the Industrial Accident Board has no right to act upon statements in the report of the accident made by the employer to the Industrial Accident Board. We think that this is too technical a view of the matter. The arbitration committee and the Industrial Accident Board are lay boards and the proceedings before them ought not to be hampered by technicalities. We are of opinion that any report which is on file with the Industrial Accident Board may be acted upon either by the committee or by the board without its being put in evidence formally.

The sum to be paid to the petitioner, if a sum is to be paid her, ought to be $4.75, not $4.50 a week.

We are however of opinion that the contention of the counsel

for the insurer is correct as to the finding of the committee that "After some correspondence and interviews following this [diagnosis of the employee's trouble as being a movable kidney caused by the injury of October 21, 1912], with her counsel and the office of the Industrial Accident Board, she filed her claim for compensation on July 6, 1915." The evidence before the committee does not disclose that there was any correspondence or interviews with her counsel and the office of the Industrial Accident Board. No such papers (if indeed it were possible) are made a part of the record in this case. This evidence stands on a different footing from the report of the employer to the Industrial Accident Board.

The result is that the decree must be reversed, the claim must be recommitted to the Industrial Accident Board for further hearing on the question whether this case comes within Part II, § 23, and, if it does, whether the claim filed on July 6, 1915, was duly filed within the act under the rule stated above. At this further hearing further evidence may be introduced by both parties. It is

*So ordered.*