SLIVEY COREY'S CASE.

ELIAS MALOOF'S CASE.

Suffolk.    May 11, 14, 1931. — September 21, 1931.

Present: CROSBY, PIERCE, CARROLL, WAIT, & FIELD, JJ.

*Workmen's Compensation Act,* Injuries to which act applies. *Proximate Cause.*

One employed as a "treer" by a shoe manufacturer became afflicted with industrial dermatitis. After he had recovered entirely but was still susceptible to a recurrence if he again used poisonous liquids employed in his work, he entered employment by a second shoe manufacturer, used the liquid, and on March 22 suffered such a recurrence and ceased work. After such second attack had cleared up, he entered employment by a third manufacturer at the same work on September 2, knowing his susceptibility to a recurrence of the disease if he used the liquids again, suffered such recurrence, and ceased work after ten days. At a hearing of a claim by him under the workmen's compensation act against the second employer, a decree was entered awarding him compensation for total incapacity from March 22 to October 8, and thereafter for partial incapacity, based on his incapacity for work as a "treer" because of his susceptibility to further outbreaks of dermatitis upon further exposure to poisonous liquids. The insurer appealed. *Held,* that

(1) The second employer took the employee in the condition in which he was when his employment began, including his susceptibility to a recurrence of the dermatitis if he used the poisonous liquids; and compensation for total incapacity from March 22 to September 2 properly was awarded against such employer;

(2) The employee had not sustained the burden of showing that his exposure, when he entered employment by the third employer after the attack from which he suffered while employed by the second employer had cleared up, was not such a voluntary act on his part as to break the line of causation between his injury, arising out of and in the course of his employment by the second employer, and his incapacity for work after September 2; and the decree awarding compensation against the second employer for total incapacity after September 2 was reversed;

(3) The evidence did not show a causal relation between the employee's injury resulting from exposure while in the employ of the second employer and his susceptibility to outbreaks of the disease after September 2; and the decree awarding compensation for partial incapacity after October 8 was reversed.

Where, upon the hearing of a claim under the workmen's compensation act by a "treer" in the shoe manufacturing industry, it appeared that after he had recovered from an attack of industrial dermatitis, for which he had received compensation under the workmen's compensation act, but while he still was susceptible to a recurrence of the disease if he again used the poisonous liquids employed in his work, he was warned by his physician "not to go back at that work and that if he did his trouble would come back," but returned to such work with another employer and suffered a recurrence of the disease resulting in total incapacity, it was error to find that his exposure when employed by the second employer was not such a voluntary act on his part as to break the line of causation between his original injury, arising out of and in the course of his previous employment, and his total incapacity; he had not sustained the burden of showing that such total incapacity was due to his original injury while in the employ of the first employer and entitled him to be paid compensation by the first employer's insurer.

At hearings of a claim by a "treer" in the shoe manufacturing industry for compensation due to partial incapacity caused by industrial dermatitis, it appeared that the employee's first attack of dermatitis was in 1929; that such attack cleared and that he was advised that he should not return to an employment where he would use the same poisonous liquids or there would be a recurrence of the attack; that he did return under a different employer, suffered an attack and ceased the employment. There was evidence that he had such susceptibility to dermatitis that there was a high degree of probability, amounting almost, if not quite, to certainty, that further exposure to poisonous liquids would result in an outbreak of the disease and that his susceptibility was then greater than when he began to work as a "treer." At one hearing a medical witness for the insurer testified that the "chances of his getting a recurrence if he goes back to this trade are now greater than at the time he first started at this trade; these skins seem to have a sensitiveness to certain things and with working the attacks seem to make the skin more sensitive"; and at a hearing nearly eleven months later the same witness testified that "he couldn't answer" whether "the first attack" gave the employee "a lowered resistance for subsequent attacks." A decree was entered awarding compensation for partial incapacity to be paid by the insurer of the first employer. Held, that the evidence left it conjectural whether there was a causal connection between the employee's injury while employed by the first employer and his susceptibility to outbreaks after his employment by the second employer had ceased, and that the decree as to partial incapacity was not warranted.

CERTIFICATION to the Superior Court under the provisions of the workmen's compensation act of a decision by the Industrial Accident Board awarding compensation to Slivey Corey for incapacity resulting from personal injury

arising out of and in the course of his employment by Central Shoe Company, Inc.; also a like

CERTIFICATION of a decision by the Industrial Accident Board awarding compensation to Elias Maloof for incapacity resulting from personal injury arising out of and in the course of his employment by Signal Shoe Company.

From the testimony of the employee Corey, it appeared that he had a succession of recurrences of the industrial dermatitis which had arisen in his work, and knew that, upon his resuming use of the poisonous liquids used in his work as a "treer," the affliction would recur.

Other material facts shown by the records are described in the opinion.

In the Superior Court, the first case was heard by *Qua*, J., and the second by *Gray*, J., and in each a final decree was entered awarding compensation. The insurers of the respective employers appealed.

*G. Gleason*, for the insurers.

*E. F. Shamon*, for the claimant Corey, submitted a brief.

*S. B. Horovitz*, for the claimant Maloof.

FIELD, J. These are workmen's compensation cases. G. L. c. 152. The employees seek compensation for incapacity for work by reason of outbreaks of industrial dermatitis and susceptibility to recurrence of such outbreaks. The underlying principles have been considered in *Panagotopulos's Case, ante*, 600, and need not be restated.

*First.* In *Corey's Case* the Industrial Accident Board decided that the insurer of the Central Shoe Company, Inc. was liable to the employee for total incapacity compensation from March 22, 1930, to October 8, 1930, and partial incapacity compensation thereafter. The Superior Court rendered a decree in accordance with this decision with a modification excluding from the period of total incapacity four days during which the employee worked for this employer and ten days during which he worked for the Amalgamated Shoe Corporation. The insurer appealed.

The decree was right so far as it awarded compensation for total incapacity from March 22, 1930, to September 2,

1930, excluding four days, but wrong as to both total and partial incapacity thereafter.

For sixteen or seventeen years this employee was a "treer." He went to work for this employer in 1929, and continued to work for it until March 22, 1930. The evidence warranted a finding that while so employed he used liquids in his work which caused an outbreak of dermatitis on his right hand rendering him wholly incapable of work from March 22, 1930, until September 2, 1930, except for four days in May when he worked for this employer. The employee's testimony to similar outbreaks from the same cause while working for the Leader Shoe Company before he entered the employ of the Central Shoe company did not require a finding that his incapacity for work after March 22 resulted from exposure to liquids in the course of such previous employment. The finding of the board "that the treer dermatitis which the employee contracted in 1929 had gotten entirely well prior to the date upon which he entered the employment of the Central Shoe Company" was warranted by the evidence. That employer took the employee in his "then condition" (*Fabrizio's Case*, 274 Mass. 352, 354,) and the insurer is not relieved of liability to pay compensation by reason of the existence at that time of any susceptibility of the employee, however caused, to outbreaks of the disease upon further exposure to poisonous liquids. *Panagotopulos's Case*, *ante*, 600, and cases cited at page 607.

On September 2, 1930, the employee went to work for the Amalgamated Shoe Company. He testified that his hand then was "clear" but "still tender," that he worked there nine or ten days and then got the same trouble again, and that after "he started to work for them, his hands broke out. He couldn't work any more." The evidence does not establish a causal relation between the employee's exposure while working for the Central Shoe company and this outbreak. He has not sustained the burden of showing that his exposure while working for the Amalgamated Shoe company was not such a voluntary act on his part as to break the line of causation between his injury, arising out of and in the course of a

previous employment, and his incapacity for work after September 2, 1930.

The award of compensation for partial incapacity was based on the employee's incapacity for work as a "treer" because of his susceptibility to further outbreaks of dermatitis upon further exposure to poisonous liquids. The evidence does not show a causal relation between the employee's injury resulting from exposure while in the employ of the Central Shoe company and his susceptibility to outbreaks of the disease after September 2, 1930.

*Second.* In *Maloof's Case* the Industrial Accident Board decided that the insurer of the Signal Shoe Company was liable to the employee for total incapacity compensation from May 19, 1930, to June 16, 1930, and partial incapacity compensation thereafter. The Superior Court rendered a decree in accordance with this decision and the insurer appealed.

The decree was erroneous. The employee has not established his right to compensation from this insurer for any period after May 19, 1930.

The employee worked as a "treer" for sixteen or seventeen years, three and a half years for the Signal Shoe Company. On February 14, 1929, while working for this employer he received an injury from exposure to liquids resulting in dermatitis in his right hand. The employee was paid compensation for total incapacity for work to November 26, 1929. Thereafter the board awarded compensation for partial incapacity, payment of which was discontinued May 19, 1930. No question as to compensation for the period prior to this date is raised in this proceeding.

The evidence warranted a finding that the employee was totally incapacitated for work from May 19, 1930, to June 16, 1930, by reason of an outbreak of dermatitis, but did not warrant a finding that such incapacity resulted from the original injury incurred by the employee in the course of his employment by the Signal Shoe Company. There was evidence that the employee had had no skin trouble of any kind before 1929. The evidence of outbreaks after February of that year was conflicting, but it could have been

found that the employee had had several of them when not working and one when, about April 1, 1930, he had worked three and a half days for the Banner Shoe Workers, Inc. The employee, however, testified without contradiction that he had an outbreak when working for the Daly's Golden Rule Shoe company, that when he went to work for that employer, following a brief period of employment by the Banner Shoe company, his hand was "all cleared up," that the work was similar to what he did for the Signal Shoe Company, and that "The doctor had advised him not to go back at that work and that if he did his trouble would come back." A medical witness for the employee testified that this "attack started after . . . [the employee] had been working for two days" and that the "period of work was from May 9, 1930, and lasted a week and two days at which time he quit work of his own accord on account of the dermatitis," and stated that on "the basis of the recurrence of the dermatitis on the same areas as that of the previous attacks, following resumption of his occupation in the pursuit of which the original trouble started," it was the opinion of the witness "that the last attack was a recurrence of the original dermatitis and that" the employee was "totally incapacitated for his work as a shoe treer." Even if the evidence that the outbreak of dermatitis when the employee worked for the Daly's Golden Rule Shoe company was a "recurrence of the original dermatitis" means more than that there was a recurrence of the condition of his hands (see *Panagotopulos's Case, ante,* 600, at page 606,) the employee has not sustained the burden of showing that his total incapacity for work after May 19, 1930, was due to his original injury and not to an independent intervening cause. It could not be found on the evidence that his exposure when employed by the Daly's Golden Rule Shoe company was not such a voluntary act on his part as to break the line of causation between his original injury, arising out of and in the course of his previous employment, and his total incapacity for work between May 19, 1930, and June 16, 1930.

The award of compensation for partial incapacity for work

after June 16, 1930, was not justified by the evidence. There was evidence that this employee had such susceptibility to dermatitis that there was a high degree of probability, amounting almost, if not quite, to certainty, that further exposure to poisonous liquids would result in an outbreak of the disease. There was some evidence, also, that this employee's susceptibility was then greater than when he began to work as a "treer." At the hearing before the single member on January 27, 1930, a medical witness for the insurer testified that the "chances of his getting a recurrence if he goes back to this trade are now greater than at the time he first started at this trade; these skins seem to have a sensitiveness to certain things and with working the attacks seem to make the skin more sensitive" though at the hearing on November 19, 1930, this witness stated that "he couldn't answer" whether "the first attack" gave the employee "a lowered resistance for subsequent attacks." In this state of the evidence the existence of a causal connection between the employee's injury on February 14, 1929, the only outbreak of the disease while he worked for the Signal Shoe Company, and his susceptibility to outbreaks after June 16, 1930, is conjectural. This insurer is required to pay compensation only for incapacity resulting from that injury.

It follows that in *Corey's Case* the decree must be modified so as to provide only for compensation for total incapacity. for work from March 22, 1930, excluding four days, to September 2, 1930, and that in *Maloof's Case* the decree must be reversed and a decree entered for the insurer.

*So ordered.*