### GRAYDON SLOCOMBE's (dependent's) CASE.

Suffolk.    November 14, 1933. — December 28, 1933.

Present: RUGG, C.J., CROSBY, PIERCE, DONAHUE, & LUMMUS, JJ.

*Workmen's Compensation Act,* Injuries to which act applies.

A caddy fifteen years of age, employed by a golf club, lived and obtained his meals at a camp maintained by the club about a quarter of a mile from the club house under a director employed by the club. After the caddy, in the performance of his duties, had walked a total of more than twenty-three miles on four succeeding days and about one fourth of a mile between the camp and the club house twice each day, a blister developed on his foot, which the camp director opened, using his finger nail to do so. He continued at his work on that day, but on the next day the director caused him to work in the camp kitchen. Later an infection of his foot developed which resulted in his death. In proceedings under the workmen's compensation act, there was medical testimony to the effect that in-

fection entered through the break in the blister. The Industrial Accident Board found that the injury which resulted in the caddy's death resulted from a hazard peculiar to his employment and flowed from it as a rational sequence. A decree was entered in the Superior Court awarding compensation. *Held*, that the findings of the Industrial Accident Board were warranted; and the decree was affirmed.

CERTIFICATION to the Superior Court under the provisions of the workmen's compensation act of a decision by the Industrial Accident Board awarding compensation to the father of a caddy employed by the Woods Hole Golf Club.

In the Superior Court, the case was heard by *Swift*, J. Material facts and evidence shown by the record are stated in the opinion. A final decree granting compensation was entered. The insurer appealed.

*J. Z. Doherty*, for the insurer.

*S. R. Wrightington*, for the claimant.

CROSBY, J. This is an appeal by the insurer from a decree of the Superior Court affirming an award of compensation made by the Industrial Accident Board to the father of the deceased employee. The employee, who was nearly fifteen years old at the time of his death, was employed by the Woods Hole Golf Club as a caddy on the golf links. His death resulted from an infected blister on his foot. The only issue presented to this court for decision is whether the blister arose out of and in the course of the employment.

The Woods Hole Caddy Camp was run by the club to furnish caddies during the summer for the club. The employee lived at the camp in a tent, and obtained his meals at the camp which was about a quarter of a mile from the club house. The camp was in charge of a director, one of his duties being to take care of blisters on the feet of the caddies. "It was a very common occurrence for the caddies to get blisters." There was evidence that on July 25, 1932, the employee showed the director a blister on his toe. It was a fresh blister. There was an old blister on the big toe of his other foot for which he had been treated by the director. The director broke the new blister with a needle and put on a bandage and the boy went to work on that day; he cad-

died one and a half times. On the following morning the blister was again treated by the director and the boy did not caddy that morning; at noon he told the director he could not walk on his foot and was told not to caddy that afternoon but to help the cook. This was a part of his job. On the following day he came to the director about his foot and was told not to caddy that day. Later in the day he became so ill that he was taken to a doctor and then sent home. After a short illness at his home he was taken to a hospital July 30, 1932, where he died on the following August 2 of infection in the blister.

John F. Pendergast testified that he was one of the caddies at the club; that he slept in the same tent with the employee who, on the Sunday night before he went to the camp director, had said he thought he was getting a blister. Dr. Richard H. Miller, a surgeon connected with the Massachusetts General Hospital, testified that he saw the employee at the hospital; that when he was brought there he was practically unconscious and was turned over to the care of this witness; that on examining him his left foot was swollen and on the back of his great toe there was an area of infection; that the condition was such that they assumed something had happened to his left foot "from which a very fulminating infection had started and that the germs had gone into his blood and that he was probably dying of blood stream infection, or what is called a septicemia"; that he never regained consciousness and died on August 2; that an examination of his blood revealed bacteria in his blood, or that he had a septicemia; that on the back of the toe there was a blister which seemed to be the starting point of the infection; that the condition which he observed was consistent with an infected blister resulting from walking around golf links as a caddy. Robert D. Brennan, another caddy, testified that on Monday, July 25, he saw the employee coming from the direction of the director's cabin with a bandage on one of his feet; that some one asked him a question and he replied that he had blisters on his feet and got them caddying. There was evidence that caddies were allowed to play tennis and golf evenings but not on Saturdays

or Sundays; that the last time the employee played tennis was Tuesday night; that the last time he had an afternoon off was Thursday before he went home. His mother testified that after he returned home he told her that the camp director had used his finger nail in treating the blister and that he (the employee) seemed troubled about it; that she did not recall that he ever before had blisters or any other kind of foot trouble; that he had two pairs of new golf shoes which had been well broken in. There was evidence that the golf club house was from a quarter to a third of a mile from the camp; that the course was eighteen holes and was six thousand yards long; and that it took from two and one half to three hours to go around it.

The single member made the following findings: The employee went around the course twice on July 20, once on the twenty-first, one and a quarter times on the twenty-second, two and a quarter times on the twenty-third, twice on the twenty-fourth, and one and a half times on the twenty-fifth; on that day he showed the director a blister on his great toe. It was common for caddies to get blisters on their feet. As a result of the hazard peculiar to his employment the employee sustained an injury to his feet arising out of and in the course of his employment, which became septic and resulted in his death. His "employment exposed him in a special manner to the risk of injury, which, from the evidence, is common to caddies while following their employment . . . the injury originated in a hazard connected with his employment and flowed as a rational sequence." The reviewing board upon all the evidence affirmed and adopted the findings and decision of the single member and ordered the insurer to pay the claimant compensation in accordance with the decision of the board. A final decree was entered in accordance with that decision. The insurer appealed.

It is the contention of the insurer that the evidence is not sufficient to warrant the findings of the board because the "cause of the deceased's condition was based on conjecture and surmise"; that "there was no evidence of a personal injury within the meaning of the . . . act"; that

"if it could be . . . inferred that the walking done by the deceased during his employment caused the blisters, the injury was not peculiar to the work, but was common to the neighborhood, and therefore did not arise out of the employment."

The testimony of Dr. Miller shows that there was a causal connection between the death of the employee and the infected blister. It could have been found that the blister was caused while the employee was caddying, and was not due to playing golf or tennis; that he remained at the camp all the time from the preceding Thursday and could not have played golf or tennis on the previous Saturday or Sunday. It appears that he worked Saturday, Sunday, Monday and a part of Tuesday. Brennan testified that he heard the employee say that he got the blister while caddying. This evidence was sufficient to warrant a finding that he received an injury while he was doing the work he was employed to perform; it was received in the course of his employment, and there was a causal connection between the conditions under which the work was required to be performed and the resulting injury. Upon such findings it could be found that the injury arose out of the employment. *McNicol's Case*, 215 Mass. 497, 498, 499. *McManaman's Case*, 224 Mass. 554. *Bean's Case*, 227 Mass. 558. *McCarthy's Case*, 232 Mass. 557. *Ferrara's Case*, 269 Mass. 243. Other cases decided by this court show that the only direct evidence of the cause of the injury which later became infected and caused death was a statement made by the deceased. *Bagley's Case*, 256 Mass. 593, 594. *Dorney's Case*, 259 Mass. 350, 353. In the case at bar the testimony of Faxon, the camp director, that it was a common occurrence for caddies to get blisters on their feet and respecting his treatment of them, together with evidence of the distance which boys of fourteen to sixteen years of age walked carrying golf bags and clubs, plainly distinguishes this case from a case where ordinary walking is in question. There was no evidence that mere walking generally produces foot blisters. The undisputed evidence showed that this employee walked four and a

quarter miles on Friday, seven and a half miles on Saturday, six and eight tenths miles on Sunday, and five and one tenth miles on Monday, and about one fourth of a mile from the camp to the club house twice each day.   The evidence that the camp director opened the blister thus giving a chance for an infection to enter, that the boy later was told to work in the kitchen, and that he stated to his mother that the camp director used his finger nail in dressing the blister, differentiates the case at bar from cases of ordinary walking in the street.   The boy's mother in answer to cross interrogatories propounded by the insurer testified that "of his two pairs of shoes which he [the employee] took to camp, one had been used some three months and the other pair had been bought and worn about a month before going to camp, so that he should have two thoroughly broken in pairs of shoes when he went to camp.   Witness has never made the statement to any one that he went to camp with new shoes which he had not worn previously."   The evidence warranted a finding that the employee lived at the camp, and all that time his activities were part of his employment.   *Doyle's Case*, 256 Mass. 290.   *Sullivan's Case*, 265 Mass. 463.

The reviewing board upon all the evidence affirmed and adopted the findings and decision of the single member under which it is found that "as a result of the hazard peculiar to his employment as a caddy . . . which exposed him in a special manner to the risk of injury, which from the evidence was common to caddies while following their employment, the employee sustained an injury to his foot which became septic and resulted in his death on August 2, 1932; that such injury originated in a hazard connected with his employment and flowed from it as a rational sequence."   We are of opinion that these findings were warranted by the evidence.

The result is that the decree of the Superior Court was correct and must be affirmed.

*So ordered.*