CORNELIUS CROWLEY'S CASE.

Suffolk.   April 3, 1934. — July 5, 1934.

Present: RUGG, C.J., FIELD, DONAHUE, & LUMMUS, JJ.

*Workmen's Compensation Act*, Injuries to which act applies, Successive insurers.   *Proximate Cause.   Words*, "Injury."

The workmen's compensation act, G. L. (Ter. Ed.) c. 152, does not require that the injury for which compensation is to be awarded under its provisions be caused by some definite accident.   Per LUMMUS, J.

The legal time of the occurrence of an injury not shown to have originated in any definite incident or at any definite time has not been clearly adjudicated. Per LUMMUS, J.

The language of the workmen's compensation act tends to show that the words "personal injury" in G. L. (Ter. Ed.) c. 152, § 26, are not limited to compensable injuries or injuries that appear likely to be compensable. Per LUMMUS, J.

One engaged in an employment with which heavy lifting was "connected . . . right along," while pushing a heavy barrel on October 30, 1931, felt a pain and a sensation "as though something snapped," but, while he complained of pain to a fellow worker, he did not stop work, but "took it easy" for a while, thinking there was nothing serious about it. Three days later he began service as a juror which continued until December 7, when he resumed his work. He suffered severe pain while lifting five days later, and for the first time noticed a swelling in his left groin, which gradually grew larger. Because of the requirements of dependents, however, he felt that he could not afford to stop work, and continued at work until he strained himself lifting on March 17, 1932, and had to go home. The next day he resumed work, which he continued for seventeen days, and then he underwent an operation for hernia, after which he returned to work cured. His employer changed insurers under the workmen's compensation act on December 1, 1931. At hearings of a claim for compensation under the workmen's compensation act, there was no medical testimony connecting the incapacity in April with the occurrences of October 30. A single member of the Industrial Accident Board found that the employee received a personal injury on March 17 when the hernia "manifested itself so that the employee had to give up work," and directed compensation to be paid by the second insurer. The board, reciting that the report of the single member contained "all the material evidence," reversed that decision and found that the injury occurred on the preceding October 30, and directed that compensation be paid by the first insurer. In the Superior Court a decree was entered in accordance with the decision of the board. On appeal, it was *held*, that

(1) Although the evidence warranted a finding that an injury arising out of and in the course of the employment was received on October 30, it did not warrant a finding that the injury, in itself, was compensable under the act, for the employee was not then incapacitated thereby;

(2) In the absence of medical testimony, common knowledge unaided was not sufficient to warrant a finding that a "strain" is likely to originate a hernia, much less that it probably did so on October 30 in the circumstances above described; the evidence did not warrant a finding that the incidents of December and March resulted from the injury on October 30 and were not independent causes of the incapacity occurring in April;

(3) The decree was wrong in directing compensation to be paid by the first insurer;

(4) It not being clear that all necessary findings had been made to enable the liability of the second insurer to be determined, the case must be recommitted to the Industrial Accident Board for further hearing of evidence to determine such liability.

CERTIFICATION to the Superior Court under the provisions of the workmen's compensation act of a decision by the Industrial Accident Board directing that compensation be paid by Century Indemnity Company to the claimant for injuries sustained while employed by Houghton & Dutton Company.

Material facts shown by the record are stated in the opinion. The decision of the Industrial Accident Board stated that the report of the single member contained "all the material evidence." By order of *W. A. Burns*, J., a decree was entered in accordance with the decision of the board. Century Indemnity Company appealed.

*F. J. Hansberry*, for the Century Indemnity Company.

*J. D. Goldberg*, for the claimant.

LUMMUS, J. The evidence warranted a finding that the employee "strained" his left groin while pushing a heavy barrel in the course of his employment on Friday, October 30, 1931, at five o'clock in the afternoon. He felt a pain unlike any that he had ever felt before. It felt "as though something snapped." He complained of the pain to a fellow workman, but did not stop work, although he "took it easy" for a while. He thought "that there was nothing serious about it that he had to give up." He worked the next day as usual; there was "heavy lifting connected with his work right along." On the following Monday, November 2, 1931, he began service as a juror which continued until he resumed his employment on December 7, 1931. On December 12, 1931, he suffered severe pain in the same place while lifting a box. On that day he noticed for the first time a swelling in the left groin, not larger than the little finger. It gradually grew larger. He did not stop work, for he had dependents to provide for, and could not afford to stop. He continued to work until he "strained" himself in the same place while lifting the carcass of a lamb

off a hook on March 17, 1932, and had to go home for the rest of the day. The next day he resumed work, and worked until April 4, 1932, when he had an operation for hernia. The operation was a success, and he went back to work, cured, on May 31, 1932.

He did not report the incident of October 30, 1931, to anyone in authority until he told his "boss" about it on March 17, 1932. He did not mention the incident of December 12, 1931, until he made a written report of all the incidents before described to the Century Indemnity Company on April 1, 1932.

The Century Indemnity Company was the insurer until December 1, 1931, and was succeeded as insurer by the Globe Indemnity Company. A single member of the Industrial Accident Board found that the employee received a personal injury on March 17, 1932, when the hernia "manifested itself so that the employee had to give up work," and held the Globe Indemnity Company liable. That company filed a claim for review. The reviewing board, reversing the single member (*Minns's Case*, 286 Mass. 459, 462), found (1) that a personal injury was received "as a result of the strain of pushing a heavy barrel of spare ribs on October 30, 1931, which brought on a left inguinal hernia and finally totally incapacitated the employee" the following spring, (2) that the Century Indemnity Company was the insurer at the time of the injury, (3) that the period of incapacity was not prolonged by reason of the failure of the employee to give written notice of his injury until April 1, 1932, or to bring home to the insurer or the insured any form of knowledge or notice until March 17, 1932, and (4) that the insurer was not prejudiced by such want of notice. The Superior Court entered a decree, based on total incapacity, against the Century Indemnity Company, and it appealed. The first, but not the only, contention of the Century Indemnity Company is, that the injury was received after it had ceased to be the insurer, and consequently that it cannot be held.

The time when a personal injury is received, within the

meaning of the workmen's compensation act (G. L. [Ter. Ed.] c. 152, § 26), is important in several respects. The injury must be received by the employee "in the course of his employment." G. L. (Ter. Ed.) c. 152, § 26. An insurer is not responsible unless the period covered by its policy includes "the time of the injury." G. L. (Ter. Ed.) c. 152, § 26. *De Filippo's Case,* 284 Mass. 531, 533. Furthermore, a notice of the injury must be given to the insurer or insured "as soon as practicable after the happening thereof," although such notice is excused in certain circumstances. G. L. (Ter. Ed.) c. 152, §§ 41–44. *Kangas's Case,* 282 Mass. 155. Still further, a claim for compensation ordinarily must be made within six months after the "occurrence" of the injury. G. L. (Ter. Ed.) c. 152, §§ 41, 49. *Johnson's Case,* 279 Mass. 481. *Gaffer's Case,* 279 Mass. 566.

Our statute does not require that the injury be caused by some definite accident. There may be an accident without injury, and there may be an injury without accident. *Hurle's Case,* 217 Mass. 223, 226. *Madden's Case,* 222 Mass. 487. *Mooradjian's Case,* 229 Mass. 521. *Sullivan's Case,* 265 Mass. 497. See also G. L. (Ter. Ed.) c. 152, § 19, where the two words are contrasted. Where the injury results from the gradual accumulation in the body of harmful foreign matter, it has been said that "a 'personal injury' occurs when the accumulation becomes so great as to cause incapacity for work, and not before." *De Filippo's Case,* 284 Mass. 531, 534, and cases cited. See also *Rousu* v. *Collins Co.* 114 Conn. 24; *Michna* v. *Collins Co.* 116 Conn. 193. An injury may be found to have arisen out of and in the course of the employment, although it cannot be shown to have originated in any definite incident or at any definite time. *Bean's Case,* 227 Mass. 558. *Mills's Case,* 258 Mass. 475. *Jarvis's Case,* 274 Mass. 305. *Slocombe's Case,* 285 Mass. 31. The legal time of occurrence of such an injury has not been clearly adjudicated. Perhaps the time when the injury became manifest would govern, for some purposes at least. In one such case the Industrial Accident Board, for the purpose of beginning the payments to dependents, was said to be "justified in taking the date when the hernias caused the employee to give

up work as the date of the injury." *Atamian's Case*, 265
Mass. 12, 16. See also *Harrington's Case,* 285 Mass. 69.

Difficulty arises, however, even when the incapacity can
be traced to a happening at a single moment of time. Man-
ual labor not infrequently involves strains, scratches and
bruises, deemed trivial at the time, which sometimes have
the most serious consequences, often considerably delayed.
In many such cases an employee in practice gives no notice
of the injury. The practical difficulty which arises from the
statutory duty of the employee to give notice of the injury
"as soon as practicable after the happening thereof"(G. L.
[Ter. Ed.] c. 152, § 41), is not great, even though it be held
that an apparently trivial hurt is still an injury within the
act. Under similar language, it has been held in England
that it is not "practicable" and therefore not required for an
employee to give notice of an injury while he reasonably
considers it so trivial that there is no likelihood that it will
ever become compensable. *Fenton* v. *Owners of Ship Kelvin,*
[1925] 2 K. B. 473. *Albison* v. *Newroyd Mill, Ltd.* 95 L. J.
K. B. 667. *Sharrod* v. *Warwickshire Coal Co. Ltd.* 22 B. W.
C. C. 599. Our own decisions point in the same direction.
*Carroll's Case,* 225 Mass. 203. *Duffy's Case,* 226 Mass. 131,
135, 136. *Levangie's Case,* 228 Mass. 213, 218. *DeFelippo's
Case,* 245 Mass. 308. *Moore's Case,* 249 Mass. 173, 176.
See also *Brackett's Case,* 126 Maine, 365. In such cases no
notice is required until a compensable incapacity becomes
likely, and the employee need not resort to the statutory
provisions dispensing with notice when there is knowledge
or want of prejudice. G. L. (Ter. Ed.) c. 152, § 44. *Kangas's
Case,* 282 Mass. 155. Neither is there any difficulty in such
cases as to the requirement of making "claim for compen-
sation with respect to such injury . . . within six months
after its occurrence." G. L. (Ter. Ed.) c. 152, § 41. Failure
to do so does not bar proceedings if "it was occasioned by
mistake or other reasonable cause" (G. L. [Ter. Ed.] c. 152,
§ 49); and a reasonable opinion that the injury is trivial has
been held "reasonable cause." *Shotts Iron Co. Ltd.* v.
*Fordyce,* [1930] A. C. 503.

The difficulties in the way of holding that a scratch,

bruise or lesion, apparently trivial, does not constitute a "personal injury," but that the injury occurs only when the incapacitating consequences become manifest, are much greater. An employee who "receives a personal injury arising out of and in the course of his employment . . . shall be paid compensation by the insurer . . . if his employer is an insured person at the time of the injury." G. L. (Ter. Ed.) c. 152, § 26. If an apparently trivial bruise or wound were held not to be an "injury" within the act until more serious consequences appear, the employee sustaining it would be remediless if, before such consequences appear, he should leave the employment, or his employer should cease to be insured under the act. Upon the same view, a new or succeeding insurer, becoming such after the bruise or wound has been received, but before its more serious consequences appear, would be liable, although there is no relation of effect and cause between those consequences and any work done during the period of coverage of its policy. In the cases in which a new or succeeding insurer has been held liable, it has always been deemed important, whether absolutely essential or not, to show that there was a causal relation between work done during the period of its policy, and the injury, even when the injury was an accumulation of foreign matter which resulted in incapacity to labor during that period. *Doyle's Case*, 269 Mass. 310, 311. *Fabrizio's Case*, 274 Mass. 352. *Langford's Case*, 278 Mass. 461. *Gee's Case*, 283 Mass. 23. *DeFilippo's Case*, 284 Mass. 531. *Harrington's Case*, 285 Mass. 69.

The language of the act tends to show that the words "personal injury" in G. L. (Ter. Ed.) c. 152, § 26, are not limited to compensable injuries or injuries that appear likely to be compensable. An employee may receive an "injury" which never becomes compensable because it never incapacitates him for seven days from earning full wages. G. L. (Ter. Ed.) c. 152, § 29. He may receive an "injury" whereby he "is not immediately incapacitated" from earning full wages. § 30. In *Burns's Case*, 218 Mass. 8, 12, Sheldon, J., said, "In common speech the word 'injury,' as

applied to a personal injury to a human being, includes whatever lesion or change in any part of the system produces harm or pain or a lessened facility of the natural use of any bodily activity or capability." In *Perangelo's Case*, 277 Mass. 59, 64, it was said, "There must be a personal injury — a lesion directly traceable to a happening in the employment and arising out of it." In *Madden's Case*, 222 Mass. 487, 489, 493, it was intimated that "a damage to a physical organ" or "a definite and specific detriment to the physiological structure" of the body, is an injury; and it was decided that evidence that the employee, while dragging a heavy carpet, "felt something give" and had the symptoms of angina pectoris, was enough to support a finding that a personal injury was then received. These definitions do not require incapacity for labor, or the anticipation of such incapacity, in order to constitute an injury, although impairment of earning capacity is ordinarily necessary in order that an injury may be compensable. *Federico's Case*, 283 Mass. 430, 432. In *Carroll's Case*, 225 Mass. 203, 207, the employee "hurt her back by lifting." It was held that she suffered an injury at that time, and not more than two years later when she became wholly incapacitated for work. See also *Murphy's Case*, 226 Mass. 60; *Sullivan's Case*, 241 Mass. 36; *McLaughlin's Case*, 259 Mass. 25; *Gee's Case*, 283 Mass. 23, 26.

Cases in other jurisdictions to the effect that "injury" means only compensable injury, are not consistent with our act nor with the English act from which ours is derived. See, for example, *Hustus's Case*, 123 Maine, 428; *Clausen* v. *Minnesota Steel Co.* 186 Minn. 80; *Farmer* v. *Bieber-Goodman Corp.* 118 Conn. 299; *Guderian* v. *Sterling Sugar & Railway Co. Ltd.* 151 La. 59; *Wheeler* v. *Missouri Pacific Railroad*, 328 Mo. 888. Compare, however, later cases in Maine. *Brackett's Case*, 126 Maine, 365. *Bartlett's Case*, 125 Maine, 374. *Fogg's Case*, 125 Maine, 524.

It was not held in *Brown's Case*, 228 Mass. 31, 37, 38, that an accident cannot cause an "injury" until it causes incapacity or the anticipation of it. The "strain" in that case apparently did not cause any contemporaneous lesion.

The point decided was simply that the employee was not barred from obtaining compensation by failure seasonably to give notice of injury. In *Cooke* v. *Holland Furnace Co.* 200 Mich. 192, a workman received a blow on the head which, unknown to him, fractured his skull. He continued to work for ten months, and then became incapacitated. It was held that the injury was received at the time of the blow. See also *Bjorseth* v. *North Dakota Workmen's Compensation Bureau,* 62 N. D. 623; *Lough* v. *State Industrial Accident Commission,* 104 Ore. 313; *Mueller* v. *United States Gypsum Co.* 203 Iowa, 1229.

In the present case, the evidence justified the finding that the employee received an injury on October 30, 1931. The unusual pain, and the sensation that something snapped in the body, were evidence of some lesion. The fact that at the moment the employee was doing work calling for great exertion, justified an inference, without the aid of medical testimony, that the injury arose out of and in the course of his employment. *Harrington's Case,* 285 Mass. 69. But that injury, standing alone, made no case for compensation, for the employee was not incapacitated for labor until April 4, 1932. In the mean time, after the Century Indemnity Company had ceased to be the insurer, the employee sustained two more strains, apparently fully as serious as the first, and discovered that he had a hernia. In order to hold the Century Indemnity Company, the burden was on the employee to show that the incapacity to work in April and May, 1932, because of hernia, was caused by the injury received on October 30, 1931, and not exclusively by some independent intervening cause. *Gaglione's Case,* 241 Mass. 42. *Geary's Case,* 253 Mass. 114. *Panagotopulos's Case,* 276 Mass. 600, 605–608. *Corey's Case,* 276 Mass. 610. *Wentworth's Case,* 284 Mass. 479. *McCann's Case,* 286 Mass. 541. See also *Gee's Case,* 283 Mass. 23; *Coakley's Case,* 284 Mass. 559. There was no medical testimony connecting the incapacity with the injury of October 30, 1931. Common knowledge may teach us that a "strain" may make manifest or even aggravate an existing or incipient hernia, but unaided it does not enable a

tribunal of fact to say that a "strain" is likely to originate a hernia, much less that it probably did so in a particular case. Neither does it show that the incidents of December 12, 1931, and March 17, 1932, were mere consequences of the injury of October 30, 1931, and not independent causes of the incapacity.

There was no evidence to support a decree against the Century Indemnity Company. The decree is to be reversed, and a decree entered for the insurer Century Indemnity Company. Since it is not clear that all necessary findings have been made to enable the liability of the Globe Indemnity Company to be determined, the case is recommitted to the Industrial Accident Board for further hearing and evidence to determine such liability.

*So ordered.*