## James Sullivan's Case.

No. 08-P-108.

Suffolk. February 9, 2009. - December 22, 2009.

Present: Duffly, Dreben, & Rubin, JJ.

*Workers' Compensation Act*, Notice, Proximate cause, Expert opinion, Fraud. *Limitations, Statute of. Practice, Civil*, Statute of limitations. *Words*, "Injury," "Disability," "Incapacity."

Discussion of G. L. c. 152, § 41, imposing a four-year statute of limitations on claims for workers' compensation benefits, running from the date the employee first becomes aware of the causal relationship between his disability and his employment; and maintaining a distinction between disability (as opposed to injury) and incapacity to work. [30-31]

The reviewing board of the Department of Industrial Accidents correctly determined that the four-year statute of limitations on the employee's claim for workers' compensation benefits, which was filed almost five years after the accident that gave rise to the claim, began to run no later than the date on which the employee sought medical treatment, three days after his injury, and therefore was time barred, where the employee's injury was immediately disabling, and thus there was no difference between the date of injury and the time that the employee became aware of the causal relationship between his disability and his employment [32]; further, there was no need for a medical diagnosis or medical report that the employee's disability was causally related to the incident at work [32]; finally, the employee's claim of fraud was not supported by the record, where the administrative judge made no finding that the employer misled the employee as to its workers' compensation insurance [32-33].

Appeal from a decision of the Industrial Accident Reviewing Board.

*Israel M. Sanchez, Jr.* (*Edward Bopp* with him) for the employee.

*Holly B. Anderson* for the employer.

Dreben, J. The employee appeals from a decision of the reviewing board of the Department of Industrial Accidents (board) denying him compensation on the ground that his claim was

untimely under G. L. c. 152, § 41, inserted by St. 1985, c. 572, § 50. That statute provides in relevant part:

> "No proceedings for compensation payable under this chapter shall be maintained unless a notice thereof shall have been given to the insurer or insured as soon as practicable after the happening thereof, and unless any claim for compensation due with respect to such injury is filed within four years from the date the employee first became aware of the causal relationship between his disability and his employment . . . .

> "The payment of compensation for any injury pursuant to this chapter or the filing of a claim for compensation as provided in this chapter shall toll the statute of limitations for any benefits due pursuant to this chapter for such injury."

The employee's claim for compensation arose out of an accident that occurred on December 17, 1999. The board, taking judicial notice of documents in its file, found that the employee was laid off from his employment on July, 2003, and made inquiries in July, 2004 about filing a claim for workers' compensation benefits based on the alleged December, 1999 incident, but did not file a claim until December 8, 2004, almost a year after the limitation period had run.

The employee's only contention on appeal is that the statute of limitations does not preclude his claim.[1] He argues that (1) the time period did not commence to run until 2004, when a report of Dr. Robert Pennell causally connected the work-related injury to his disability; (2) that at the earliest, the period did not commence until July, 2003, when he was incapacitated and could no longer work; and (3) that even if it commenced at the time of his injury, December 17, 1999, the statute was tolled until July, 2004, because his employer fraudulently concealed the fact that it was covered by workers' compensation, and the employee first learned

---

[1] His claim, filed with the department, stated that the date of injury was December 17, 1999, that the first day of total or partial incapacity was December 18, 1999, that the injury occurred when he "fell off ladder," and he was seeking "Total, Temporary Incapacity" and "Partial Incapacity" compensation from July 1, 2003 and continuing, as well as medical expenses under G. L. c. 152, §§ 13 and 30.

that the employer was covered in July, 2004. We agree with the board that his claim is barred.

1. *Evidence and findings of the administrative judge.* The employee testified that on December 17, 1999, while working as a custodian for St. Joseph's Parish (parish), he descended a ladder, missed three steps, and landed on both feet. He felt something snap in his knees, and that prior to December 17, 1999, he had no problems with his knees other than a bruised kneecap from a 1998 automobile accident.[2] He went to his physician, Dr. Thomas Jevon, on December 20, 1999. Dr. Jevon's records from December 20, 1999 through January 6, 2003 were introduced at the hearing before the administrative judge as were numerous other medical reports, including the report of the independent medical examiner, Daniel Bienkowski, dated June 20, 2005.[3] Dr. Jevon's note of December 20, 1999 states in relevant part:

> "S: 51 yo man without any previous hx of knee pain, notes severe pain in his knee last Friday after going up and down a ladder at work. Since then it has been painful to walk, get out of a chair, go up or down stairs. Has never had serious knee problems in the past. . . .

> "Gen: . . . pain on patellar ballotment, FROM, 5/5 strength . . . there is tenderness at the medial joint space.

> "A: ? meniscal injury

> "P: Placed in knee immobilizer, will take Motrin 800mg po tid x 10 days, warned of side effects. FU in 1 week, if not improved may need ortho referral."

Dr. Jevon referred the employee to a specialist in orthopedic surgery. Thereafter, in April, 2001, the employee changed orthopedists and received treatment for both knees. Having continuing pain, he was referred to another specialist, and had bilateral knee arthroplasties (total knee replacements) on October 2, 2003.

---

[2] He acknowledged that he had suffered a gunshot wound to his leg during his military service.

[3] Other than Dr. Jevon's note of December 20, 1999, the only medical reports contained in the record appendix on appeal are those of Dr. Bienkowski and Dr. Pennell.

During the nearly four years culminating in his total knee replacement in October, 2003, the administrative judge found "the employee continued to perform his job as much as possible, occasionally using sick or vacation time when he was unable to work. At times he even needed a wheelchair for mobility."

The administrative judge made an erroneous finding that the medical records did not document any history of a work-related incident until the December 2, 2004 report of Dr. Pennell, and, based in part on that finding, denied and dismissed the employee's claims.[4]

2. *Decision of the board.* Both the employee and the self-insurer appealed to the board; the employee, on the ground that the administrative judge erred in finding that there was no contemporaneous medical evidence documenting a work-related injury; the self-insurer, because the denial of the claim, although proper, should have been based on the self-insurer's properly raised statute of limitations defense.

Although agreeing with the employee's claim that Dr. Jevon's report corroborated the fact that he had sought treatment for a work-related knee injury on December 20, 1999, the board considered recommittal to the administrative judge for reconsideration unnecessary because the statute of limitations began to run on December 20, 1999 and barred the employee's claims. The board quoted the following passage from *Orekoya* v. *Bank of New England Corp.*, 14 Mass. Workers' Comp. Rep. 29, 31-32 (2000) (*Orekoya*):

> "[T]he work-related 'disability' of which the employee must first become aware for the statute of limitations to begin to run, includes medical treatment, without regard to actual incapacity for work. Section 41 applies to all 'proceedings for compensation.' It is settled that medical benefits are 'compensation' under the Act. (Citation omitted.) Therefore, the discovery rule set out in the language of § 41 must apply equally to claims for § 30 medical benefits alone, as to claims for weekly indemnity benefits. To

---

[4]The administrative judge denied the employee's claim on the basis that the employee had failed in his burden of showing that he "sustained an injury arising out of and in the course of his employment." The administrative judge did not view Dr. Jevon's notes as giving "a history of an incident on December 17, 1999" or "a work-related condition."

interpret the statute otherwise narrows its scope impermissibly, and leaves § 30 claims without any statute of limitations."

The board concluded that the "dispositive holding" of *Orekoya* was that "[t]he four-year limitations period began to run at the time [the employee] discovered the connection between his work injury and his medical disability which was no later than the . . . date of the medical treatment sought." *Id.* at 33. In both *Orekoya* and in the present case, the board based its decision on factual findings showing that the employee was disabled as a result of the injury and was aware of the causal relationship between his disability and his employment.

The board rejected the employee's claim that he was not disabled until he was laid off (and could no longer work) or until there was a medical opinion on causation (Dr. Pennell's report), and also rejected his claim of fraud.

3. *Discussion.* a. *Disability distinct from injury as well as from incapacity under c. 152.* Prior to 1985, the period for making a claim for purposes of the statute of limitations was one year from the date of injury,[5] and even a trivial injury could trigger the statute. Injury included "whatever lesion or change in any part of the system produces harm or pain or a lessened facility of the natural use of any bodily activity or capability." *Crowley's Case,* 287 Mass. 367, 374 (1934), quoting from *Burns's Case,* 218 Mass. 8, 12 (1914). The statute also contained a broadly construed provision, G. L. c. 152, § 49,[6] mitigating the harshness of the short statute of limitations. Thus, in *Crowley's Case, supra* at 372, the court noted that failure to make a claim does not bar

[5]In relevant part St. 1965, c. 487, § 1, provided: "No proceedings for compensation for an injury shall be maintained unless a notice thereof shall have been given to the insurer or insured as soon as practicable after the happening thereof, and unless the claim for compensation with respect to such injury has been made within one year after its occurrence, or, in case of the death of the employee, or in the event of his physical or mental incapacity, within one year after death or the removal of such incapacity. . . ."

[6]Former § 49 in relevant part provided: "Failure to make a claim within the time fixed by section forty-one shall not bar proceedings under this chapter if it is found that it was occasioned by mistake or other reasonable cause, or if it is found that the insurer was not prejudiced by the delay. In no case shall failure to make a claim bar proceedings if the insurer has executed an agreement in regard to compensation with the employee or made any payment for compensation under this chapter."

proceedings if the failure " 'was occasioned by mistake or other reasonable cause' (G. L. c. 152, § 49); and a reasonable opinion that the injury is trivial has been held 'reasonable cause.' "[7]

Injury specifically differed from inability to work. Again quoting from *Crowley's Case*, 287 Mass. at 373, "An employee may receive an 'injury' which never becomes compensable because it never incapacitates him for seven days from earning full wages. G. L. c. 152, § 29."[8] Injury could occur before the date of incapacity to work. See *Carroll's Case*, 225 Mass. 203, 207 (1916); *Crowley's Case*, 287 Mass. at 373; *Anderson's Case*, 288 Mass. 96, 99-100 (1934); *Gustafson's Case*, 303 Mass. 397, 398 (1939); *Steuterman's Case*, 323 Mass. 454, 457 (1948).

In 1985, § 41 was amended, the portion of § 49 cited in note 6, *supra*, was deleted, and the period of limitations was extended to four years. Unlike § 49, but reflecting its ameliorating effect, § 41 provides that the time begins to run not on the date of injury, but rather from "the date the employee first be[comes] aware of the causal relationship between his disability and his employment." While the statute no longer uses the date of "injury" as the triggering event for purposes of the statute of limitations, the present language has been construed by both the board[9] and the Supreme Judicial Court to retain the distinction between the medical elements (disability) and incapacity to work. Just as there is a difference between injury and disability, there is a difference between disability (physical or mental impairment) and incapacity (loss of earning capacity),[10] although c. 152 is not always careful in distinguishing them. Incapacity is a concept that involves economic elements as well as medical issues. See *Scheffler's Case*, 419 Mass. 251, 256 (1994). Since disability is not the same as inability to work, the employee's claim in the present action that the statute did not begin to run until he could no longer work misses the mark.

[7]See Nason, Koziol & Wall, Workers' Compensation § 15.4 at 461, and cases cited in nn. 30-34 (3d ed. 2003).

[8]The statute now requires five days of incapacity.

[9]See *Loudenslager* v. *Massachusetts College of Art*, 14 Mass. Workers' Comp. Rep. 322, 323 n.1 (2000); *Orekoya, supra* at 32-33; *Ames* v. *Town of Plymouth*, 19 Mass. Workers' Comp. Rep. 150, 159 n.10 (2005).

[10]The contours of the meaning of the terms are, of course, for the board to determine in the first instance.

In the present case, the employee was injured on December 17, 1999, and, as Dr. Jevon's notes indicate, his injury was immediately disabling.[11] He suffered severe pain at the time of the incident, pain that interfered with his walking, getting up from a chair, and going up and down stairs. Here, as in many cases, there was no difference between the date of injury and the time the employee became aware of the causal relationship between his disability and his employment. Thus, the board was correct in this case in determining that the statute of limitations began to run no later than December 20, 1999, the date of the medical treatment sought.[12]

b. *Remaining claims of employee.* Contrary to the employee's contention, there was no need for a medical diagnosis or a medical report that his disability was causally related to the incident at work. See *Lewis* v. *Trimble,* 79 Ohio St. 3d 231, 240 (1997) (not necessary for claimant to know the exact diagnosis for the condition if he or she knows enough about its nature to realize that it is both serious and work-connected, citing 2B Larson, Workmen's Compensation § 78.41(d), at 15-271 [1996]).

The employee's claim of fraud is not supported on this record. As the board pointed out, the administrative judge made no finding that the employer misled the employee either intentionally or otherwise as to its workers' compensation insurance.[13] (The parish did have coverage but failed to post its coverage as

---

[11]The statute provides no definition of the word disability.

[12]To the extent that the board appears to view *Orekoya* as setting a per se rule that any visit to a doctor after a work-related injury starts the period of the statute of limitations, we disagree with that interpretation of § 41.

[13]Neither the board nor this court may on this record make a finding of fraud. "Findings of fact, assessments of credibility, and determinations of the weight to be given the evidence are the exclusive function of the administrative judge." *Pilon's Case,* 69 Mass. App. Ct. 167, 169 (2007).

There was conflicting testimony on the issue. The employee testified that Reverend Steele (the pastor of the church and the employee's supervisor) told him, "We don't use that. We have long term disability." Reverend Steele denied making such a statement.

The employee has not sought a remand for a finding of the administrative judge on the issue of fraud. The employee's decision is rational in view of the administrative judge's other findings. He found that the employee's testimony that he did not feel it necessary to tell the reverend in charge of the parish about the incident, having previously told the accountant about it, was not credible. The administrative judge also commented, "I do not find it probable that a person who is a high school graduate, who was a military intelligence

required by G. L. c. 152, § 21).[14] In any event, as the board also noted, even if the employer did not have coverage, the employee would have been entitled to file a claim against the workers' compensation trust fund, and such a claim would also have been subject to the four-year limitation period of § 41.

As the employee has not shown that the board's decision that his claim is time barred is erroneous, the decision is affirmed.

*Decision of reviewing board affirmed.*

---

analyst, who was self-employed for some eighteen years, and who had regular direct contact with the pastor of the parish, who underwent significant medical and surgical treatment would not have pursued a claim for workers' compensation." These findings suggest that it would have been unlikely for the administrative judge to have found fraud. A finding of mistake would not have been sufficient to overcome the statute of limitations. See *Baker's Case*, 55 Mass. App. Ct. 628, 633 (2002). See also *Booth's Case*, 289 Mass. 322, 325 (1935) (even under the prior statute, ignorance of the law not a justification).

[14]In *Young* v. *Duncan*, 218 Mass. 346, 350 (1914), the court noted, albeit in a different context, that failure to comply with § 21 of the statute does not carry with it any penalty to the employer or to the employee.